A. Peter Rausch, Jr. (State Bar No. 127930)
LAW OFFICES OF A. PETER RAUSCH, JR.
1930 Tienda Drive, Suite 106
Lodi, California 95242
Telephone:     (209) 952-5000
Facsimile:     (209) 339-8505
E-Mail:        counsel@rausch.com

Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail:        mark@markmerin.com
               paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF CARMEN MENDEZ,
JORGE MENDEZ, SR., JORGE MENDEZ, JR.,
KYLAND RILEY, ROSARIO SANCHEZ,
BERTHA MENDEZ, and DOMINGO MENDEZ

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| ESTATE OF CARMEN MENDEZ, et al., | Case No. 1:18-cv-01677-LJO-BAM |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | |
| CITY OF CERES, et al., | |
| Defendants. | Date:        March 21, 2019 |
| | Time:        8:30 a.m. |
| | Location:    Robert E. Coyle U.S. Courthouse |
| | 2500 Tulare Street |
| | Fresno, California 93721 |
| | Courtroom:   4 (7th Floor) |
| | Judge:       Hon. Lawrence J. O'Neill |

# TABLE OF CONTENTS

I.    **INTRODUCTION**........................................................................................................1

II.   **STATEMENT OF RELEVANT FACTS**................................................................1

III.  **ARGUMENT**...............................................................................................................1

  **A.   FED. R. CIV. P. 19: JOINDER OF "NECESSARY" PARTIES** .........................2

    1.   Any "Necessary" Party Objection Was Waived .................................................2

    2.   Ms. Beidleman Is Not A "Necessary" Party .....................................................2

    3.   Even If "Necessary," Ms. Beidleman Could Be Joined As A Nominal Defendant.....................3

  **B.   CERES POLICE DEPARTMENT IS A SEPARATELY SUEABLE ENTITY** .......................4

  **C.   FIRST CLAIM: UNREASONABLE FORCE (FOURTH AMENDMENT)** .....................5

    1.   Municipal Liability ...........................................................................................6

    2.   Supervisory Liability ........................................................................................8

  **D.   SECOND CLAIM: RIGHT OF ASSOCIATION (FOURTEENTH AMENDMENT)** ..........11

    1.   "Duplicative" Rights Under The First Amendment...........................................11

    2.   Standing ...........................................................................................................12

  **E.   THIRD CLAIM: RIGHT OF ASSOCIATION (FIRST AMENDMENT)** ......................13

  **F.   FOURTH CLAIM: UNREASONABLE FORCE (CAL. CONST. ART. I, § 13)**....................14

    1.   Affirmative Intent To Authorize A Damages Action To Remedy Violations............................15

    2.   Constitutional Tort Analysis ............................................................................17

      *a.   Adequacy of Alternative Remedies*........................................................18

      *b.   Changes to Established Tort Law* ............................................................19

      *c.   Nature and Significance of Constitutional Provision* ...........................20

      *d.   Special Factors* .......................................................................................20

  **G.   NINTH CLAIM: BANE ACT (CAL. CIV. CODE § 52.1(B))**.............................21

    1.   Standing ...........................................................................................................21

    2.   "Duplicative, Superfluous and Unnecessary" Allegations ................................24

IV.  **CONCLUSION** ........................................................................................................25

i

**<u>TABLE OF AUTHORITIES</u>**

<small>CASES</small>

*A.C. v. Griego*, 2016 U.S. Dist. LEXIS 141508 (E.D. Cal. Oct. 11, 2016) .................................6

*Aguaristi v. County of Merced*, 2019 U.S. Dist. LEXIS 12596 (E.D. Cal. Jan. 25, 2019) ...........4

*Allen v. City of Muskogee*, 119 F.3d 837 (10th Cir. 1997) .........................................................8

*Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307 (Cal. 1997) ..............................................19

*Barone v. City of Springfield*, 902 F.3d 1091 (9th Cir. 2018) .....................................................5

*Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054 (E.D. Cal. 2009)...................................24

*Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141 (Cal. Ct. App. 1995) .......21, 22, 23

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987) ............................13

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) .......................................15

*Booke v. County of Fresno*, 98 F. Supp. 3d 1103 (E.D. Cal. 2015).............................................9

*Brown v. New York*, 89 N.Y.2d 172 (N.Y. 1996) .....................................................................16

*Butler v. Riverside County*, 2015 U.S. Dist. LEXIS 53061 (C.D. Cal. Apr. 22, 2015) ...............5

*Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998) .........................................................................11

*Camarillo v. City of Maywood*, 2008 U.S. Dist. LEXIS 85386 (C.D. Cal. Aug. 27, 2008) .......17

*Cangress v. City of Los Angeles*, 2016 U.S. Dist. LEXIS 192571 (C.D. Cal. Mar. 22, 2016)....7

*Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516 (9th Cir. 1997).............................................21

*Carlson v. Green*, 446 U.S. 14 (1980) .....................................................................................19

*Chapman v. Jarrell*, 2005 U.S. Dist. LEXIS 31132 (S.D. W. Va. Nov. 16, 2005) ...................10

*Chipman v. Nelson*, 2016 U.S. Dist. LEXIS 128966 (E.D. Cal. Sep. 15, 2016) .........................3

*Citibank, N.A. v. Oxford Props. & Fin., Ltd.*, 688 F.2d 1259 (9th Cir. 1982)............................2

*Connick v. Thompson*, 563 U.S. 51 (2011) ..............................................................................8

*Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766 (Cal. Ct. App. 2017) ...................22, 23

*Creer v. City of Vallejo*, 2015 U.S. Dist. LEXIS 78714 (E.D. Cal. June 16, 2015) .....................7

*Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991) .....................................................22

*Curry v. Baca*, 497 F. Supp. 2d 1128 (C.D. Cal. 2007)............................................................2

*Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992).....................................................................5

ii

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
*Estate of Mendez v. City of Ceres*, United States District Court, Eastern District of California, Case No. 1:18-cv-01677-LJO-BAM

*Degrassi v. Cook*, 29 Cal. 4th 333 (Cal. 2002) ........................................................................18

*Dela Torre v. City of Salinas*, 2010 U.S. Dist. LEXIS 97725 (N.D. Cal. Sep. 17, 2010) .........................12

*Derritt v. City of Pomona*, 2014 U.S. Dist. LEXIS 108645 (C.D. Cal. May 23, 2014) ..............................5

*Duffy v. Cal. State Pers. Bd.*, 232 Cal. App. 3d 1 (Cal. Ct. App. 1991) .............................................19, 20

*Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 (9th Cir. 1989) ..........................................................1

*Espinosa v. City & County of San Francisco*, 2011 U.S. Dist. LEXIS 100291 (N.D. Cal. Sep. 7, 2011) .15

*Estate of Burkhart v. United States*, 2008 U.S. Dist. LEXIS 65893 (N.D. Cal. Aug. 26, 2008)..................3

*Estate of Duran v. Chavez*, 2015 U.S. Dist. LEXIS 163863 (E.D. Cal. Dec. 4, 2015) ..............................6

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995) .................................................................13

*Galindez v. Miller*, 285 F. Supp. 2d 190 (D. Conn. 2003) ........................................................................7

*Garcia v. County of Riverside*, No. 5:13-cv-00616-JGB-SP, ECF No. 99 (C.D. Cal. April 28, 2017)......16

*Garmon v. County of Los Angeles*, 828 F.3d 837 (9th Cir. 2016) ............................................................21

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) ...................................................................................11

*Graham v. Connor*, 490 U.S. 386 (1989) ...................................................................................................5

*Graham v. County of Los Angeles*, 2011 U.S. Dist. LEXIS 95469 (C.D. Cal. Aug. 25, 2011)..................14

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1989) ...................................1

*Halcomb v. City of Sacramento*, 2016 U.S. Dist. LEXIS 81490 (E.D. Cal. June 20, 2016) ......................6

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................................................................19

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008)................................................................10

*Harris v. County of Sacramento*, 2018 U.S. Dist. LEXIS 133935 (E.D. Cal. Aug. 7, 2018)......................5

*Humboldt Baykeeper v. Union Pac. R.R. Co.*, 2009 U.S. Dist. LEXIS 48131 (N.D. Cal. June 1, 2009).....2

*Hurtado v. County of Sacramento*, 2014 U.S. Dist. LEXIS 115649 (E.D. Cal. Aug. 19, 2014)...............15

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ............................................................12, 14

*In re William G.*, 40 Cal. 3d 550 (Cal. 1985)...........................................................................................20

*Indep. Towers of Wash. v. Washington*, 350 F.3d 925 (9th Cir. 2003).....................................................15

*J.M. v. County of Stanislaus*, 2018 U.S. Dist. LEXIS 190855 (E.D. Cal. Nov. 6, 2018) ...........................7

*Jacob B. v. County of Shasta*, 40 Cal. 4th 948 (Cal. 2007).......................................................................18

*John v. Lake County*, 2019 U.S. Dist. LEXIS 28717 (N.D. Cal. Feb. 22, 2019)......................................15

iii

*Johnson v. Baca*, 2014 U.S. Dist. LEXIS 196976 (C.D. Cal. Mar. 3, 2014).............................................23

*Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) ...........................................................................10

*Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360 (Cal. Ct. App. 2017)..................................14

*Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621 (9th Cir. 1988).............................4, 5

*Katzberg v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300 (Cal. 2002).....................15, 16, 17, 18, 19, 20

*Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 79950 (E.D. Cal. June 18, 2015) ............................8

*Kaur v. City of Lodi*, 263 F. Supp. 3d 947 (E.D. Cal. 2017) ..............................8, 12, 13, 14

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) ..................................................................13, 22

*Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir. 1985) ...............................................11

*Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183 (E.D. Cal. 2018) ...................22

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) .............................................10

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)..................................12, 13, 22

*Lopez v. County of San Diego*, 2016 U.S. Dist. LEXIS 186003 (S.D. Cal. Dec. 5, 2016) ....................3

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .................................................................25

*Mann v. City of Sacramento*, 748 F. App'x 112 (9th Cir. 2018) ......................................13

*Martinez v. City of Colton*, 2016 U.S. Dist. LEXIS 117787 (C.D. Cal. Aug. 30, 2016)..................5

*Martinez v. City of West Sacramento*, 2019 U.S. Dist. LEXIS 19511 (E.D. Cal. Feb. 4, 2019).............24

*McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir. 1988)................................................1

*McMurray v. County of Sacramento*, 2012 U.S. Dist. LEXIS 11501 (E.D. Cal. Jan. 30, 2012)..............2

*Meggitt Inc. v. Nie Yongzhong*, 2014 U.S. Dist. LEXIS 194348 (C.D. Cal. June 4, 2014).................2

*Melo v. Hafer*, 912 F.2d 628 (3d Cir. 1990) ...........................................................................9

*Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) .........................................19

*Millender v. County of Los Angeles*, 2007 U.S. Dist. LEXIS 102252 (C.D. Cal. Mar. 15, 2007) ..............17

*Monday v. McDonnell*, 2015 U.S. Dist. LEXIS 170913 (C.D. Cal. Dec. 18, 2015) ...................................5

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)....................................................4, 6, 19

*Morales v. City of Delano*, 2012 U.S. Dist. LEXIS 66442 (E.D. Cal. May 10, 2012)..........................2, 3

*Moresi v. Louisiana*, 567 So.2d 1081 (La. 1990) ...............................................................16

*Mullins v. Oregon*, 57 F.3d 789 (9th Cir. 1995) ................................................................11

iv

*Neuroth v. Mendocino County*, 2016 U.S. Dist. LEXIS 11109 (N.D. Cal. Jan. 28, 2016)........................23

*Neylon v. County of Inyo*, 2016 U.S. Dist. LEXIS 161326 (E.D. Cal. Nov. 18, 2016) ..............................7

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................................................3

*Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123 (E.D. Cal. 2013)...............................................4

*Osborne v. County of Riverside*, 385 F. Supp. 2d 1048 (C.D. Cal. 2005)...........................................12, 14

*OSJ Pep Tenn. LLC v. Harris*, 2014 U.S. Dist. LEXIS 142822 (C.D. Cal. Oct. 7, 2014) .................16, 17

*OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ........................................................................11

*Paterno v. California*, 74 Cal. App. 4th 68 (Cal. Ct. App. 1999)......................................................12, 24

*Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875 (9th Cir. 1987)..................................................14

*People v. Brisendine*, 13 Cal. 3d 528 (Cal. 1975).....................................................................................20

*People v. Cahan*, 44 Cal. 2d 434 (Cal. 1955) ..........................................................................................20

*Phillips v. County of Fresno*, 2013 U.S. Dist. LEXIS 170511 (E.D. Cal. Dec. 2, 2013) ...........................6

*Piper v. Cabillo*, 670 F. App'x 507 (9th Cir. 2016)............................................................................12, 13

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ...............................................................................11, 23

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017).................................................................21

*Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980) .........................................................................19

*Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)....................................................21, 22, 23

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .........................................................................................13

*Rodgers v. City of Pasadena*, 2016 U.S. Dist. LEXIS 173019 (C.D. Cal. Dec. 12, 2016)........................5

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ...............................6, 7, 8, 11, 22, 23

*Romero v. Pac. Gas & Elec. Co.*, 156 Cal. App. 4th 211 (Cal. Ct. App. 2007) ........................................3

*Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006) ..............................................................14

*Sanchez v. County of Santa Clara*, 2018 U.S. Dist. LEXIS 140140 (N.D. Cal. Aug. 17, 2018)...............14

*Schmid v. City of Petaluma*, 2012 U.S. Dist. LEXIS 14141 (N.D. Cal. Feb. 6, 2012)............................20

*Schwarz v. Lassen County*, 2013 U.S. Dist. LEXIS 136933 (E.D. Cal. Sep. 23, 2013)..........................12

*Shadd v. County of Sacramento*, 2014 U.S. Dist. LEXIS 26143 (E.D. Cal. Feb. 26, 2014) ....................10

*Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986) .............................4, 5

*Shellabarger v. Hale*, 2018 U.S. Dist. LEXIS 147573 (E.D. Cal. Aug. 28, 2018)..................................15

v

*Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656 (N.D. Cal. Aug. 24, 2018) ...............15

*Silva v. San Pablo Police Dep't*, 319 F. Supp. 3d 1198 (N.D. Cal. 2018) ..........................................14, 15

*Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987) ..............................................................11, 23

*Smith v. City of Stockton*, 2018 U.S. Dist. LEXIS 136656 (E.D. Cal. Aug. 10, 2018)............................10

*Smith v. County of Riverside*, 2006 U.S. Dist. LEXIS 98213 (C.D. Cal. May 15, 2006)..........................17

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................................................10, 11

*Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001)...............................................4, 5, 22

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826 (S.D. Tex. 2011)......................................................6, 8

*Tolan v. Cotton*, 572 U.S. 650 (2014)...........................................................................................5

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) ...............................................................8

*Turano v. County of Alameda*, 2018 U.S. Dist. LEXIS 185909 (N.D. Cal. Oct. 30, 2018) ......................7

*United States v. Reese*, 2 F.3d 870 (9th Cir. 1993)...........................................................................22

*Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230 (Cal. Ct. App. 2007)....................................19

*Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (Cal. 2004) ............................................................22

*Ward v. City of San Jose*, 967 F.2d 280 (9th Cir. 1992)........................................................................23

*Wheeler v. City of Santa Clara*, 894 F.3d 1046 (9th Cir. 2018) ....................................................11, 12, 13

*Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921 (Md. 1984)..................................................................16

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) .......................................................................11, 23

## R<small>ULES</small>

Fed. R. Civ. P. 12(b) ...........................................................................................................1

Fed. R. Civ. P. 12(c) ...........................................................................................................1

Fed. R. Civ. P. 12(f)(2) ......................................................................................................24

Fed. R. Civ. P. 17(b)(3).......................................................................................................4

Fed. R. Civ. P. 19 ...............................................................................................................2

## S<small>TATUTES</small>

Cal. Civ. Code § 52.1(b) ................................................................................................24, 25

Cal. Civ. Code § 52.1(c) .....................................................................................................24

Cal. Civ. Code § 52.1(i) ......................................................................................................25

Cal. Code Civ. Proc. § 382 ................................................................................................3

Cal. Gov. Code § 811.2....................................................................................................4

Cal. Gov. Code § 815.2(a) ..............................................................................................19

Cal. Gov. Code § 911.2(a) ................................................................................................3

Cal. Gov. Code § 945........................................................................................................4

OTHER AUTHORITIES

William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*,

    90 Harv. L. Rev. 489 (1977) .......................................................................................19

Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983*

    § 6:52 (4th ed. 2009)....................................................................................................9

# I.   **INTRODUCTION**

Plaintiffs Estate of Carmen Mendez, Jorge Mendez, Sr., Jorge Mendez, Jr., Kyland Riley, Rosario Sanchez, Bertha Mendez, and Domingo Mendez submit the following in opposition to Defendants City of Ceres, Ceres Police Department, and Brent Smith Fed. R. Civ. P. 12(c) motion for judgment on the pleadings.

# II.   **STATEMENT OF RELEVANT FACTS**

On August 18, 2018, Ceres Police Department police officer "Doe" Defendants shot and killed 15-year-old Carmen Spencer Mendez.

On December 10, 2018, Plaintiffs Estate of Carmen Mendez, Jorge Mendez, Sr., Jorge Mendez, Jr., Kyland Riley, Rosario Sanchez, Bertha Mendez, and Domingo Mendez (collectively, "Plaintiffs") filed the Complaint initiating the instant action. (ECF No. 1 [Complaint].)

On January 7, 2019, Defendants City of Ceres, Ceres Police Department, and Brent Smith (collectively, "Defendants") filed an Answer to the Complaint. (ECF No. 7 [Answer].)

On February 21, 2019, Defendants filed the instant motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). (ECF No. 9 [Motion] & 9-1 [Memo.].)[1]

# III.   **ARGUMENT**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "[T]he same standard of review applicable to a [Fed. R. Civ. P.] 12(b) motion applies to its [Fed. R. Civ. P.] 12(c) analog," because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). A court must "accept all material allegations in the complaint as true," and resolve all doubts "in the light most favorable to the plaintiff." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). "[C]ourts have discretion to grant a [Fed. R. Civ. P.] 12(c) motion with leave to amend; courts also have discretion simply to grant

---

[1] All citations to pagination of filed documents pertain to those provided at the top of the document via the CM/ECF docketing system, as opposed to the page number provided at the bottom of the document.

1

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
*Estate of Mendez v. City of Ceres*, United States District Court, Eastern District of California, Case No. 1:18-cv-01677-LJO-BAM

dismissal of the action instead of entry of judgment." *Curry v. Baca*, 497 F. Supp. 2d 1128, 1130-31 (C.D. Cal. 2007).

## A.   FED. R. CIV. P. 19: JOINDER OF "NECESSARY" PARTIES

Defendants argue that Carmen Mendez's mother, Stephanie M. Beidleman, is a "necessary" party to this litigation, pursuant to Fed. R. Civ. P. 19. (ECF No. 9-1 [Memo.] at 9:24-10:17.)

Initially, Defendants' argument should be rejected solely on the basis that it fails to identify to *which* claims or interests Ms. Beidleman is a "necessary" party. *See Morales v. City of Delano*, 2012 U.S. Dist. LEXIS 66442, at *33-34 (E.D. Cal. May 10, 2012) ("Defendants' argument is confusing; perhaps partly because Defendants have failed to identify and distinguish the interests at play," where various federal and state law claims are at issue, including successor-in-interest and individual claims). Plaintiffs cannot adequately respond to such vague and non-specific arguments.

### 1.   Any "Necessary" Party Objection Was Waived

"In federal procedure, failure to join necessary parties is waived if objection is not made in defendant's first responsive pleading…" *Citibank, N.A. v. Oxford Props. & Fin., Ltd.*, 688 F.2d 1259, 1262 n.4 (9th Cir. 1982). Defendants did not raise any Fed. R. Civ. P. 19 objections on the basis that Ms. Beidleman was a "necessary" party in their "first responsive pleading." (ECF No. 7 [Answer].) As a result, they are precluded from doing so now, on a belated basis. *See, e.g., Humboldt Baykeeper v. Union Pac. R.R. Co.*, 2009 U.S. Dist. LEXIS 48131, at *6-8 (N.D. Cal. June 1, 2009); *Meggitt Inc. v. Nie Yongzhong*, 2014 U.S. Dist. LEXIS 194348, at *5-6 (C.D. Cal. June 4, 2014). Even if Defendants belatedly seek to argue that Ms. Beidleman is an "indispensable" party, for the first time on reply, that argument would also fail. *See McMurray v. County of Sacramento*, 2012 U.S. Dist. LEXIS 11501, at *8-9 (E.D. Cal. Jan. 30, 2012) (omitted heirs are not "indispensable" parties under federal or state law).

### 2.   Ms. Beidleman Is Not A "Necessary" Party

Defendants' argument, which is unsupported by analysis or authority, is that Ms. Beidleman is a "necessary" party because she is one of Carmen Mendez's successors-in-interest. (ECF No. 9-1 [Memo.] at 9:24-10:17.) However, "[n]either logic or any authority … suggest that joinder of all heirs as plaintiffs is necessary," where "any person who is a successor in interest may represent [a] [d]ecedent's claims for the benefit of his estate." *Morales*, 2012 U.S. Dist. LEXIS 66442, at *34 (emphasis added). "[T]his

2

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
*Estate of Mendez v. City of Ceres*, United States District Court, Eastern District of California, Case No. 1:18-cv-01677-LJO-BAM

action is concerned with the amount of damages due [*d*]*ecedent's estate*; if any, not with the distribution [of] [d]ecedent's estate among [d]ecedent's heirs. . . If [Ms. Beidleman] or anyone else has a claim to some portion of [Carmen Mendez]'s estate and the claim or claims are disputed, they may [be] adjudicated in a separate action." *Id*.; *see also Lopez v. County of San Diego*, 2016 U.S. Dist. LEXIS 186003, at *18 (S.D. Cal. Dec. 5, 2016) ("[The decedent]'s estate is the only party with a legal interest.").

Further, presently-unknown facts could confirm that Ms. Beidleman <u>cannot</u> be a party, whatsoever. For example, Defendants have stated that Ms. Beidleman "recently filed a government tort claim." (ECF No. 10 [Joint Scheduling Report] at 4:23-26.) The timeliness of that claim could preclude Ms. Beidleman's right to recover any portion of the estate. *See* Cal. Gov. Code § 911.2(a) (requiring presentation of a claim "not later than six months after the accrual of the cause of action…"). *See, e.g.*, *Estate of Burkhart v. United States*, 2008 U.S. Dist. LEXIS 65893, at *21 (N.D. Cal. Aug. 26, 2008) (concluding that unjoined heirs were not "necessary" parties because joinder was "not feasible" where the heirs failed to file timely government claims); *Chipman v. Nelson*, 2016 U.S. Dist. LEXIS 128966, at *42-47 (E.D. Cal. Sep. 15, 2016) (expiration of statute of limitations barring heirs' claims confirmed that the heirs were not "necessary" parties); *Lopez*, 2016 U.S. Dist. LEXIS 186003, at *18 (same).

### 3.   Even If "Necessary," Ms. Beidleman Could Be Joined As A Nominal Defendant

Even if Defendants' waived and erroneous argument that Ms. Beidleman is a "necessary" party were accepted, Defendants' request to "stay all proceedings pending [] joinder" (ECF No. 9-1 [Memo.] at 10:15-17) is not the appropriate remedy. Defendants did not move for a stay of these proceedings and, therefore, cannot be granted relief which was not properly requested. *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (identifying relevant factors for consideration of a stay). For state law wrongful death claims, an heir may be "named as a defendant," pursuant to Cal. Code Civ. Proc. § 382. *See Romero v. Pac. Gas & Elec. Co.*, 156 Cal. App. 4th 211, 216 (Cal. Ct. App. 2007). In other words, if Ms. Beidleman were a "necessary" party, the pleading could be cured by naming of Ms. Beidleman as a nominal defendant, and Defendants are not entitled to the judgment as a matter of law, as requested. Defendants' request that a stay be entered, which would force the parties to wait for Ms. Beidleman to enter the action, if even possible, is unsupported by any logic or authority.

Therefore, Defendants' motion for judgment pursuant to Fed. R. Civ. P. 19 must be denied.

3

**B.     CERES POLICE DEPARTMENT IS A SEPARATELY SUEABLE ENTITY**

Defendants argue that naming the Ceres Police Department as a party-defendant (ECF No. 1 [Complaint] at 4:2-3 [¶13]) is improper and that it must be dismissed. (ECF No. 9-1 [Memo.] at 12:3-19.) Defendants' argument is supported only by non-controlling authorities. (*Id.*) While "numerous decisions in this district" have previously reached the wrong conclusion, *see Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123, 1172 n.24 (E.D. Cal. 2013), more recently, courts in this district have recognized that "the Ninth Circuit has held that police departments … are capable of being sued…" *See, e.g.*, *Aguaristi v. County of Merced*, 2019 U.S. Dist. LEXIS 12596, at *6 (E.D. Cal. Jan. 25, 2019).

A party's "[c]apacity to sue or be sued is determined … by the law of the state where the court is located…" Fed. R. Civ. P. 17(b)(3). Accordingly, resolution of whether the Ceres Police Department is subject to suit is "determined by the law of California." *See Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir. 1986). Under California law, "[a] public entity may sue and be sued." Cal. Gov. Code § 945. A "'[p]ublic entity' includes the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Cal. Gov. Code § 811.2. The Ninth Circuit has held that a police department is a public entity under Cal. Gov. Code § 811.2. *Shaw*, 788 F.2d at 604-05; *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988).[2] This holding remains controlling, absent any subsequent indication from the California courts that it is incorrect. *See Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001).

First, Defendants argue that "departments and sub-units" are "improper defendants under [42 U.S.C. §] 1983." (ECF No. 9-1 [Memo.] at 12:11-14.) This argument ignores the U.S. Supreme Court's holding that "municipalities and other local government units" are subject to liability as "persons" under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend

---

[2] Defendants are aware of these controlling authorities, which preclude their argument, where Plaintiffs' counsel cited the same for their benefit, prior to Defendants' filing the instant motion. *See also Estate of Pimentel v. City of Ceres*, E.D. Cal. Case No. 1:18-cv-01203-DAD-EPG. Defendants provide no explanation for why they have failed to cite to or address these authorities. *See* Fed. R. Civ. P. 11(b)(2).

1  municipalities and other local government units to be included among those persons to whom § 1983

2  applies."). In any event, Defendants' argument is irrelevant, where "[t]he question here is not whether [a]

3  [] [police] [d]epartment is a 'person' for the purposes of liability under *Monell* and [42 U.S.C. §] 1983,

4  but whether [a] [d]epartment is a legal entity subject to suit" under the forum state's law. *See Dean v.*

5  *Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).

6       Second, Defendants argue that naming the Ceres Police Department renders "the claims against it

7  [] redundant to those claims against the City of Ceres." (ECF No. 9-1 [Memo.] at 12:15-19.) Not so.[3] The

8  Ninth Circuit has specifically identified local law enforcement departments as "separately suable

9  entit[ies]." *See Streit*, 236 F.3d at 565-66. Accordingly, "Ninth Circuit case law also confirms that [42

10  U.S.C. §] 1983 actions can proceed against both a public entity (here the [City of Ceres]) and its local

11  law enforcement agency (the [Ceres Police] Department) simultaneously." *Harris v. County of*

12  *Sacramento*, 2018 U.S. Dist. LEXIS 133935, at *7 (E.D. Cal. Aug. 7, 2018). *See Shaw*, 788 F.2d 600

13  (City of San Jose <u>and</u> San Jose Police Department); *Karim-Panahi*, 839 F.2d 621 (City of Los Angeles

14  <u>and</u> Los Angeles Police Department); *Streit*, 236 F.3d 552 (County of Los Angeles <u>and</u> Los Angeles

15  County Sheriff's Department). *See also Rodgers v. City of Pasadena*, 2016 U.S. Dist. LEXIS 173019, at

16  *5-7 (C.D. Cal. Dec. 12, 2016); *Martinez v. City of Colton*, 2016 U.S. Dist. LEXIS 117787, at *54-55

17  (C.D. Cal. Aug. 30, 2016); *Monday v. McDonnell*, 2015 U.S. Dist. LEXIS 170913, at *17 (C.D. Cal.

18  Dec. 18, 2015); *Butler v. Riverside County*, 2015 U.S. Dist. LEXIS 53061, at *9 (C.D. Cal. Apr. 22,

19  2015); *Derritt v. City of Pomona*, 2014 U.S. Dist. LEXIS 108645, at *3 n.1 (C.D. Cal. May 23, 2014).

20       Therefore, Defendants' motion for judgment concerning Defendant Ceres Police Department's

21  status as a party to this action must be denied.

22  **C.    FIRST CLAIM: UNREASONABLE FORCE (FOURTH AMENDMENT)**

23       The Fourth Amendment of the U.S. Constitution guarantees citizens the right "to be secure in

24  their persons … against unreasonable … seizures," including use of excessive force. *See Graham v.*

25  *Connor*, 490 U.S. 386, 394 (1989); *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("When a plaintiff alleges

26  excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right

27  _____

28  [3] Reasons for naming both entities include the potential for different entities/officials possessing final
policymaking authority. *See*, *e.g.*, *Barone v. City of Springfield*, 902 F.3d 1091, 1106-09 (9th Cir. 2018).

5

against unreasonable seizures.").

### 1.    Municipal Liability

A local government may be directly liable under 42 U.S.C. § 1983 when it inflicts an injury. *See Monell*, 436 U.S. at 694.

> A local government is liable for an injury under § 1983 under three possible theories. First, a local government may be liable if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury. Second, a local government can fail to train employees in a manner that amounts to "deliberate indifference" to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [local government] can reasonably be said to have been deliberately indifferent to the need. Third, a local government may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802-03 (9th Cir. 2018) (internal citations, quotations & alterations omitted).

"[I]n the context of municipal liability it would be rare if a plaintiff had access to the existence or absence of internal policies prior to discovery. Accordingly, … 'only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.'" *Halcomb v. City of Sacramento*, 2016 U.S. Dist. LEXIS 81490, at *10 (E.D. Cal. June 20, 2016) (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842-43 (S.D. Tex. 2011)). Generally, a "relaxed pleading standard" for pre-discovery municipal liability claims applies and allegations made "on information and belief" are permitted. *See, e.g.*, *A.C. v. Griego*, 2016 U.S. Dist. LEXIS 141508, at *10-11 (E.D. Cal. Oct. 11, 2016); *Estate of Duran v. Chavez*, 2015 U.S. Dist. LEXIS 163863, at *29 (E.D. Cal. Dec. 4, 2015); *Phillips v. County of Fresno*, 2013 U.S. Dist. LEXIS 170511, at *29-30 (E.D. Cal. Dec. 2, 2013).

Plaintiffs Estate of Carmen Mendez ("Estate") has alleged that Defendants City of Ceres and Ceres Police Department (collectively, "Entity Defendants") are responsible for violating his Fourth Amendment rights through the maintenance of inadequate policies or customs concerning the use of excessive and unreasonable force against citizens contacted by their personnel, as reflected by the uses of force against Carmen Mendez in this case and several other alleged and documented uses of

6

unreasonable force. (ECF No. 1 [Complaint] at 7:27-8:5 [¶36].)[4]

First, Defendants argue that Plaintiff Estate's "allegations fall far short, alleging only that inadequate training resulted in the use of unreasonable force which then resulted in the violation of decedent's rights." (ECF No. 9-1 [Memo.] at 21:15-17.) But Defendants' argument mischaracterizes the allegations, which include identification of: (i) "[m]ultiple settlements paid" to settle litigation against Entity Defendants and their personnel; and (ii) "[p]rior incidents, complaints, and/or litigation" against Entity Defendants and their personnel. (ECF No. 1 [Complaint] at 5:23-7:2 [¶30].)[5] "The incidents described in the complaint are multiple, specific events in which significant force was utilized by [Ceres Police Department personnel] in situations where the force used may plausibly be said to have been excessive." *J.M. v. County of Stanislaus*, 2018 U.S. Dist. LEXIS 190855, at *13-17 (E.D. Cal. Nov. 6, 2018). "[O]ther civil rights actions … that are either currently pending or have been settled, all involving allegations of the excessive use of force," plausibly suggests the existence of municipal liability. *See Creer v. City of Vallejo*, 2015 U.S. Dist. LEXIS 78714, at *11-18 (E.D. Cal. June 16, 2015); *see also Galindez v. Miller*, 285 F. Supp. 2d 190, 198-99 (D. Conn. 2003); *Turano v. County of Alameda*, 2018 U.S. Dist. LEXIS 185909, at *26 (N.D. Cal. Oct. 30, 2018). "[I]t is sufficient under [Ninth Circuit] case law to prove a 'custom' of encouraging excessive force to provide evidence that personnel have been permitted to use force with impunity." *Rodriguez*, 891 F.3d at 803 (collecting cases).

Second, Defendants argue that any alleged "lack of policy caus[ing] the alleged constitutional violations … amounts to allegations of a single incident of unconstitutional activity which is insufficient to impose liability under *Monell*." (ECF No. 9-1 [Memo.] at 22:14-18.) However, insufficient supervision, training, or discipline constitutes a "lack of policy," or "omission." *See, e.g.*, *Tsao v. Desert*

---

[4] The Fourth Amendment claims are styled as implicating both the "Fourth and Fourteenth Amendments to the U.S. Constitution" (ECF No. 1 [Complaint] at 7:17) because "the Fourteenth Amendment is the conduit for Fourth Amendment protections against a State." *See Neylon v. County of Inyo*, 2016 U.S. Dist. LEXIS 161326, at *22 (E.D. Cal. Nov. 18, 2016).

[5] Defendant cites only to *Cangress v. City of Los Angeles*, 2016 U.S. Dist. LEXIS 192571, at *23-24 (C.D. Cal. Mar. 22, 2016), for the proposition that "lawsuits alone are unsubstantiated allegations that are not evidence of an unconstitutional policy." (ECF No. 9-1 [Memo.] at 22:21-23.) However, in that case, decided after discovery and on summary judgment, the court found insufficient that the plaintiffs could identify only three lawsuits, "in a period of around 15 years," that "d[id] not involve the same allegations" as those involved in that action. *See Cangress*, 2016 U.S. Dist. LEXIS 192571, at *22-25.

7

*Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) ("A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations."). Further, not only has Plaintiff Estate alleged the existence of multiple other *incidents* (ECF No. 1 [Complaint] at 5:23-7:2 [¶30]), but it has also alleged multiple constitutional *violations* occurring during a "single incident." *See Allen v. City of Muskogee*, 119 F.3d 837, 844-45 (10th Cir. 1997) ("A plaintiff can properly rely on the single incident if there is other evidence of inadequate training" during the course of that *same* "single incident"); *see also Thomas*, 800 F. Supp. 2d at 843-44 (identifying as relevant "multiple harms," "misconduct that occurred in the open," and "the involvement of multiple officials in the misconduct."). In any event, Defendants' argument that a "single incident" involving a municipal omission cannot give rise to liability is wrong, where a "showing of 'obviousness' can substitute for the pattern of violations ordinarily necessary to establish municipal liability," where a violation of a protected right is a "'highly predictable consequence'" of a failure to train. *See Connick v. Thompson*, 563 U.S. 51, 63-64 (2011). In other words, where the failure to train is patently obvious, a single constitutional violation suffices to give rise to municipal liability under a "single-incident" theory. *Id.; see also Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 983 (E.D. Cal. 2017).

Third, Defendants argue that "Plaintiffs' *Monell* claim based upon supervisory liability [against Defendant Smith] fails to state a claim upon which relief may be granted…" (ECF No. 9-1 [Memo.] at 23:4-22.) Defendants' argument is confused, where "*Monell* does not concern liability of individuals." *See Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984). Plaintiffs did not allege *Monell* liability against Defendant Smith. (*See* ECF No. 1 [Complaint] at 4:4-7 [¶14] ("Defendant B[rent] S[mith] is sued in his individual capacity.").) Defendants' attempt to dismiss a claim that does not exist is ineffective. *See, e.g., Kaur v. City of Lodi*, 2015 U.S. Dist. LEXIS 79950, at *1 n.1 (E.D. Cal. June 18, 2015) ("Defendant [police chief] cannot challenge the *Monell* claims" to which he is not party).

## 2. Supervisory Liability

A supervisor may be liable under 42 U.S.C. § 1983 in an individual capacity if there exists either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez*, 891 F.3d at 798 (internal quotations & citations omitted). "A sufficient causal connection between a

8

supervisor's conduct and a constitutional violation can be shown []: (1) [where] the supervisor sets in motion a series of acts by others, or knowingly refuses to terminate a series of acts by others, that the supervisor knew or reasonably should know will cause others to inflict a constitutional injury; (2) [by] the supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates; (3) [by] the supervisor's acquiescence in or ratification/condoning of the constitutional deprivation; or (4) [by] conduct [of] the supervisor that showed a reckless or callous indifference to the rights of others." *Booke v. County of Fresno*, 98 F. Supp. 3d 1103, 1129 (E.D. Cal. 2015).

Similar to the allegations against the Entity Defendants, Plaintiff Estate has alleged that Defendant Smith—Entity Defendants' police chief—is individually liable for violating Carmen Mendez's Fourth Amendment rights through the maintenance of inadequate policies or customs concerning the use of excessive and unreasonable force against citizens contacted by his personnel, as reflected by the uses of force against Carmen Mendez in this case and several other alleged and documented uses of unreasonable force. (ECF No. 1 [Complaint] at 7:27-8:5 [¶36].)

First, Defendants argue that Plaintiff Estate's allegations "against [Defendant] Smith appear to be solely … in his official capacity…" (ECF No. 9-1 [Memo.] at 13:1-10.) Again, Defendants' argument ignores Plaintiffs' allegations: "Defendant B[rent] S[mith] is sued in his individual capacity." (ECF No. 1 [Complaint] at 4:4-7 [¶14].) Apparently, Defendants' argument is premised on a mistaken belief that *any* action or inaction taken pursuant to "policy-making authority" or "policies, customs or practices" necessarily implicates a state actor's "official capacity." (*See* ECF No. 9-1 [Memo.] at 13:1-10.) But "[i]t does not follow that every time a public official acts under color of state law, the suit must necessarily be one against the official in his or her official capacity." *Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990), *aff'd by Hafer v. Melo*, 502 U.S. 21 (1991). *See also* Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983* § 6:52 (4th ed. 2009) (frequently, "lawyers do not realize that 'color of law' is not synonymous with official capacity and that it is typically present in *both* individual capacity *and* official capacity damages actions.").

Second, Defendants argue, without citation to authority, that "Plaintiffs have failed to allege any causes of action against [Defendant] Smith in his individual capacity" because the allegations concern "only [] issues with policies, customs, or practices or the lack thereof." (ECF No. 9-1 [Memo.] at 13:21-

9

14:7.) Defendants' argument demonstrates a misunderstanding of the law. Plaintiffs have not alleged that Defendant Smith was at the scene when the unreasonable force giving rise to this action was used and, therefore, the claims against him do not involve his direct and personal participation, in a contemporaneous sense. However, neither a supervisor's "direct personal participation in the deprivation," *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978), nor "physical[] presen[ce] when the injury occurred," *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011), is required, where "[a] supervisor will rarely be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury," *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Defendant Smith's position as police chief means that his individual liability "oftentimes overlaps" with that of his office. *See Larez*, 946 F.2d at 645; *Harper v. City of Los Angeles*, 533 F.3d 1010, 1025 (9th Cir. 2008); *see also Smith v. City of Stockton*, 2018 U.S. Dist. LEXIS 136656, at *27-28 (E.D. Cal. Aug. 10, 2018) ("A police chief's supervisory function can blur his liability based on official contrasted to individual capacity, the proof of which often overlaps."); *Chapman v. Jarrell*, 2005 U.S. Dist. LEXIS 31132, at *24 n.6 (S.D. W. Va. Nov. 16, 2005) (evidence necessary to establish supervisory and municipal liability claims "practically will be the same").

Third, Defendants argue, without citation to authority, that, "[t]o the extent that Plaintiffs seek to impute knowledge of other constitutional violations or establish a custom or practice, … simply listing off the names of several settled lawsuits with allegations of violations and/or unsettled pending litigation does not provide such findings." (ECF No. 9-1 [Memo.] at 14:7-11.) However, Plaintiff Estate has alleged that Defendant Smith knew or should have known of the inadequate nature of his department's policies or customs concerning the use of excessive and unreasonable force against citizens by personnel under his command, based on: (i) "[m]ultiple settlements paid" to settle litigation against Entity Defendants and their personnel; and (ii) "[p]rior incidents, complaints, and/or litigation" against Entity Defendants and their personnel. (ECF No. 1 [Complaint] at 5:23-7:2 [¶30].) The Ninth Circuit recognizes that allegations of "numerous incidents" and "systematic problems" involving personnel under a supervisor's command are sufficient to state a claim for individual liability. *See Starr*, 652 F.3d at 1216; *see also Shadd v. County of Sacramento*, 2014 U.S. Dist. LEXIS 26143, at *13-15 (E.D. Cal. Feb. 26, 2014) (alleged "pervasive culture of violence" coupled with exemplary incidents sufficient to state

10

supervisor's individual liability). "[A] [supervisor] is liable for [] abuse perpetrated by his subordinates if he knowingly turns a blind eye to the abuse." *OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("turn a-blind-eye approach" is "sufficient to support the conclusion that the [misconduct] [was] condoned by the officials…"). For example, where a supervisor "knowingly participate[s] in creating and maintaining a culture of impunity for officers' use of unconstitutionally excessive force . . . [a] jury could [] reasonably conclude that [the supervisor]'s 'inaction in the training, supervision, or control of his subordinates' provided a basis for supervisory liability." *Rodriguez*, 891 F.3d at 799 (quoting *Starr*, 652 F.3d at 1208).

Therefore, Defendants' motion for judgment on the Fourth Amendment claims must be denied.

## D.   SECOND CLAIM: RIGHT OF ASSOCIATION (FOURTEENTH AMENDMENT)

"Official conduct that 'shocks the conscience' in depriving [a family member] of [a constitutionally protected] interest is cognizable as a violation of due process." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). The Ninth Circuit has explicitly recognized relationships which possess constitutionally-protected liberty interests against unwarranted state interference, including those of parents, *see Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985); children, *see Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987); and spouses, *see Byrd v. Guess*, 137 F.3d 1126, 1133-34 (9th Cir. 1998). However, protected relationships are not necessarily defined by "biological link" alone, *Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir. 1995), but, rather, by whether "it is [an] actual relationship that society recognizes as worthy of respect and protection…" *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1060 (9th Cir. 2018) (concurring opinion).

### 1.   "Duplicative" Rights Under The First Amendment

Defendants argue that the alleged Fourteenth Amendment claims are "duplicative" of similarly-alleged claims based on the First Amendment. (*Compare* ECF No. 1 [Complaint] at 8:26-9:6 [¶41] (Fourteenth Amendment claims) *with id*. at 9:28-10:9 [¶46] (First Amendment claims).) On that basis, and without citation to authority, Defendants argue that the Fourteenth Amendment claims "must be dismissed with prejudice." (ECF No. 9-1 [Memo.] at 15:1-8.)

But "[t]hat a given set of facts fortuitously supports liability on two legal theories is not a

11

principled reason to deny a party the right to pursue each theory." *Paterno v. California*, 74 Cal. App. 4th 68, 104 (Cal. Ct. App. 1999). In fact, Defendants' argument has been rejected by the Ninth Circuit on multiple occasions, where it has expressly recognized that "[c]laims [can properly be brought] under <u>both</u> the First <u>and</u> Fourteenth Amendment for unwarranted interference with the right to familial association," <u>simultaneously</u>. *See Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (emphasis added) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) ("[D]efendants' actions and policies constituted an 'unwarranted interference' with [son]'s and his mother's right to familial association under both the First and Fourteenth Amendments.")); *see also Kaur*, 263 F. Supp. 3d at 973; *Schwarz v. Lassen County*, 2013 U.S. Dist. LEXIS 136933, at *29-30 (E.D. Cal. Sep. 23, 2013); *Dela Torre v. City of Salinas*, 2010 U.S. Dist. LEXIS 97725, at *12-13 (N.D. Cal. Sep. 17, 2010).

### 2.    Standing

Defendants argue that the Fourteenth Amendment claims of Plaintiffs "identified as the aunt [Rosario Sanchez], grandmother [Bertha Mendez] and grandfather [Domingo Mendez] of decedent Carmen Mendez" must be dismissed, by citation to *Piper v. Cabillo*, 670 F. App'x 507 (9th Cir. 2016). (ECF No. 9-1 [Memo.] at 15:9-16:3.) The *Piper* decision concerned the claims of a "legal guardian" who was denied the ability to pursue a constitutionally-protected liberty interest, based on the termination of that guardianship which was a "creature of state law." 670 F. App'x at 507-08.

The *Piper* decision does not control the outcome in this case, where Plaintiffs Rosario Sanchez, Bertha Mendez, Domingo Mendez's relationships with Carmen Mendez were <u>not</u> "creatures of state law" but, rather, had a biological origin and were "actual relationship[s] that society recognizes as worthy of respect and protection…" *See Wheeler*, 894 F.3d at 1060 (concurring opinion); *see also Osborne v. County of Riverside*, 385 F. Supp. 2d 1048, 1054-55 (C.D. Cal. 2005) (observing that the presence of an "existing family unit" is sufficient to state a protected relationship). If Defendants seek to challenge the sufficiency of these relationships, they may do so through discovery, where, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Therefore, Defendants' motion for judgment on the Fourteenth Amendment claims must be

12

1   denied.

2   **E.**     **THIRD CLAIM: RIGHT OF ASSOCIATION (FIRST AMENDMENT)**

3       "The First Amendment, while not expressly containing a 'right of association,'" *Freeman v. City*

4   *of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995), nonetheless, "protects those relationships, including

5   family relationships, that presuppose 'deep attachments and commitments to the necessarily few other

6   individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but

7   also distinctively personal aspects of one's life.'" *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,

8   481 U.S. 537, 545 (1987) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984)). Accordingly,

9   "[t]he Ninth Circuit has recognized a First Amendment familial association claim," *Kaur*, 263 F. Supp.

10   3d at 973, where a state actor's "actions and policies constitute an 'unwarranted interference' with [a

11   person's] right to familial association…" *Lee*, 250 F.3d at 685-86; *Keates*, 883 F.3d at 1236.

12       Defendants argue that the First Amendment claims of Plaintiffs "identified as the aunt [Rosario

13   Sanchez], grandmother [Bertha Mendez] and grandfather [Domingo Mendez] of decedent Carmen

14   Mendez" must be dismissed, by citation to *Piper v. Cabillo*, 670 F. App'x 507 (9th Cir. 2016). (ECF No.

15   9-1 [Memo.] at 15:9-16:3.) The *Piper* decision concerned the claims of a "legal guardian" who was

16   denied the ability to pursue a constitutionally-protected liberty interest, based on the termination of that

17   guardianship which was a "creature of state law." 670 F. App'x at 507-08.

18       Again, the *Piper* decision does not control the outcome in this case, where Plaintiffs Rosario

19   Sanchez, Bertha Mendez, Domingo Mendez's relationships with Carmen Mendez were <u>not</u> "creatures of

20   state law" but, rather, had a biological origin and were "actual relationship[s] that society recognizes as

21   worthy of respect and protection…" *See Wheeler*, 894 F.3d at 1060 (concurring opinion). While courts

22   have "not mark[ed] the potentially significant points on this terrain with any precision," *Roberts*, 468

23   U.S. at 620, a recent unpublished Ninth Circuit disposition outlined protected relationships as follows:

24        [R]elationships involving marriage, child-rearing, or cohabitation are protected by the

25        First Amendment, and other relationships, "including family relationships," may also be
        protected to the extent that the "objective characteristics" of the relationship (*i.e.* "factors

26        such as size, purpose, selectivity, and . . . exclu[sivity]") demonstrate that it is
        "sufficiently personal or private to warrant constitutional protection."

27   *Mann v. City of Sacramento*, 748 F. App'x 112, 114-15 (9th Cir. 2018) (quoting *Rotary Club*, 481 U.S. at

28   545-46).

In this case, and on the pleadings, Defendants cannot dispute Plaintiffs' relationships involved any of these characteristics of a protected relationship. For example, Carmen Mendez "cohabitated" with each of the family member Plaintiffs at the time of his death, and otherwise maintained highly "personal" relationships with them. *See, e.g., Kaur*, 263 F. Supp. 3d at 974-75 (denying summary judgment of siblings claims); *Sanchez v. County of Santa Clara*, 2018 U.S. Dist. LEXIS 140140, at *23-24 (N.D. Cal. Aug. 17, 2018) (denying motion to dismiss where minors "felt nurtured, comfortable, safe, and loved in the home of the [plaintiffs]."); *Graham v. County of Los Angeles*, 2011 U.S. Dist. LEXIS 95469, at *4-6 (C.D. Cal. Aug. 25, 2011) ("[The plaintiff]'s relationship with [the decedent], her fiancé, was sufficiently personal and intimate to merit the protection of the First Amendment…"); *see also Osborne*, 385 F. Supp. 2d at 1054-55 (observing that the presence of an "existing family unit" is sufficient). If Defendants seek to challenge the sufficiency of these relationships, they may do so through discovery, where, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be [evaluated] on evidentiary grounds." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1057.

Therefore, Defendants' motion for judgment on the First Amendment claims must be denied.

## F.   FOURTH CLAIM: UNREASONABLE FORCE (CAL. CONST. ART. I, § 13)

Article I, section 13 of the California Constitution guarantees "[t]he right of the people to be secure in their persons … against unreasonable seizures…" As the language indicates, art I, § 13 "parallels" protections afforded by the Fourth Amendment of the U.S. Constitution. *See Sanchez v. County of San Diego*, 464 F.3d 916, 929 (9th Cir. 2006).

Defendants argue that monetary damages are not available for violations of art. I, § 13. (ECF No. 9-1 [Memo.] at 16:4-28.) In fact, "[t]he California Supreme Court has [] not decided whether there is a private cause of action for damages under article I, section 13, which protects against unreasonable searches and seizures, and federal courts are divided on this question." *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 392 (Cal. Ct. App. 2017); *Silva v. San Pablo Police Dep't*, 319 F. Supp. 3d 1198, 1202 (N.D. Cal. 2018) ("California courts … have not yet decided this important issue of state law."). Nonetheless, "federal courts are not precluded from affording relief…" *Paul v. Watchtower Bible & Tract Soc'y*, 819 F.2d 875, 879 (9th Cir. 1987).

14

> [I]t is appropriate to employ the following framework for determining the existence of a damages action to remedy an asserted constitutional violation [under the California Constitution]. First, [a court] shall inquire whether there is evidence from which [the court] may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation. . . Second, if no affirmative intent either to authorize or to withhold a damages remedy is found, [a court] shall undertake the "constitutional tort" analysis adopted by *Bivens* [*v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971),] and its progeny.

*Katzberg v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300, 317 (Cal. 2002).

Initially, Defendants' insufficient argument should be rejected on its face, for failure sufficiently to address the issue, where no analysis is provided in reference to these "novel and complicated" claims, *Silva*, 319 F. Supp. 3d at 1202. *See*, *e.g.*, *Espinosa v. City & County of San Francisco*, 2011 U.S. Dist. LEXIS 100291, at *13 (N.D. Cal. Sep. 7, 2011) (issue was "not adequately briefed" where the "analytical framework adopted in *Katzberg*" was not addressed); *Hurtado v. County of Sacramento*, 2014 U.S. Dist. LEXIS 115649, at *9-10 (E.D. Cal. Aug. 19, 2014) (the parties did not "undertake[] the *Katzberg* analysis" and only cited to "cases that d[id] not control th[e] court's resolution"); *Shen v. Albany Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 144656, at *14 (N.D. Cal. Aug. 24, 2018) ("[T]he analysis under *Katzberg* is a complicated issue. Defendants have not done it justice by making what is effectively a passing reference to it in their briefs, and the Court declines to take it up in that underdeveloped form."); *see also John v. Lake County*, 2019 U.S. Dist. LEXIS 28717, at *18-21 (N.D. Cal. Feb. 22, 2019). A court cannot "manufacture arguments" on behalf of a party that did not assert them. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *Shellabarger v. Hale*, 2018 U.S. Dist. LEXIS 147573, at *36-37 (E.D. Cal. Aug. 28, 2018) (a district judge has a "limited and neutral role in the adversarial process" and cannot "make a party's case for it").

## 1.    Affirmative Intent To Authorize A Damages Action To Remedy Violations

"In undertaking [the first] inquiry [a court] shall consider the language and history of the constitutional provision at issue, including whether it contains guidelines, mechanisms, or procedures implying a monetary remedy, as well as any pertinent common law history." *Katzberg*, 29 Cal. 4th at 317. On its face, art. I, § 13 provides no clearly stated intent to authorize a damages remedy. *See* Cal. Const., art. I, § 13. "Accordingly, [a court] must look further in [] attempt to discern whether article I, section [13] was intended to include a damages remedy." *Katzberg*, 29 Cal. 4th at 318. "In considering

15

evidence of an implied right to seek damages, … it [is] appropriate to examine, as have sister state jurisdictions that have permitted damage suits to remedy search and seizure violations, common law history from which [a court] might infer, within the provision at issue, an intent to provide an action for damages to remedy a violation of that provision." *Id.* at 322 & 310 n.9.

Based on these considerations, "it seems likely the California courts would determine that Article I, Section 13 creates a private right of action for a damages remedy…" *Silva*, 319 F. Supp. 3d at 1202-03.

> For example, in recognizing a right to damages to remedy a violation of the state search and seizure and equal protection provisions, [in *Brown v. New York*, 89 N.Y.2d 172, 188 (N.Y. 1996),] the New York Court of Appeals observed that "the courts have looked to the common-law antecedents of the constitutional provision to discover whether a damage remedy may be implied. New York's first Constitution in 1777 recognized and adopted the existing common law of England and each succeeding Constitution has continued that practice. Thus, in some cases, there exist grounds for implying a damage remedy based upon preexisting common-law duties and rights."
>
> The court in *Brown* found such grounds for implying a right of action. First, the court observed, "[t]he prohibition against unlawful searches and seizures originated in the Magna Carta and has been part of our statutory law since 1828. The civil cause of action was fully developed in England and provided a damage remedy for the victims of unlawful searches at common law (*see*, *Huckle v. Money*, 2 Wils. 205, 95 Eng. Rep. 768 [1763]; *Wilkes v. Wood*, Lofft 1, 98 Eng. Rep. 489 [1763]; *Entick v. Carrington*, 19 State Tr. 1029, [1558-1774] All ER Rep. 41 [1765]]." Second, the court in *Brown* observed that this English common law rule had been endorsed and accepted by the New York court and by the drafters of the most recent state constitution, and hence found historical support for an implied remedy in damages.

*Katzberg*, 29 Cal. 4th at 322-23 (quoting *Brown*, 89 N.Y.2d at 188) (internal citations omitted). "Similar reasoning supporting an action for damages to remedy a search and seizure violation has been embraced by the high courts of Maryland and Louisiana." *Id.* at 323 n.21 & n.22 (citing *Widgeon v. E. Shore Hosp. Ctr.*, 479 A.2d 921, 925 (Md. 1984), and *Moresi v. Louisiana*, 567 So.2d 1081, 1092 (La. 1990)).

The *Katzberg* decision's extensive recognition of implied damages actions, while *dicta*, is highly suggestive of how the California Supreme Court would decide this issue. *See*, *e.g.*, *Garcia v. County of Riverside*, No. 5:13-cv-00616-JGB-SP, ECF No. 99 at 6 (C.D. Cal. April 28, 2017) ("[T]he discussion in *Katzberg* addressing the rights flowing to a victim of an illegal search and seizure provides a strong predictor as to how the California Supreme Court would decide this issue: namely, by inferring a right to damages based on the provision's derivation from English common law."); *OSJ Pep Tenn. LLC v. Harris*, 2014 U.S. Dist. LEXIS 142822, at *20 (C.D. Cal. Oct. 7, 2014) ("[A]s the *Katzberg* court noted,

16

the English common law, by longstanding practice, provided a damages remedy for unlawful searches and seizures."); *Camarillo v. City of Maywood*, 2008 U.S. Dist. LEXIS 85386, at *20 (C.D. Cal. Aug. 27, 2008) ("[F]urther analysis of *Katzberg* demonstrates the California Supreme Court's implied recognition of a damages claim under Article I, § 13."); *Millender v. County of Los Angeles*, 2007 U.S. Dist. LEXIS 102252, at *115-16 (C.D. Cal. Mar. 15, 2007) ("[T]he *Katzberg* court … indicat[ed] that [the plaintiff] would have found a damages remedy under Article I, § 13."); *Smith v. County of Riverside*, 2006 U.S. Dist. LEXIS 98213, at *21 (C.D. Cal. May 15, 2006) ("[T]he California Supreme Court's implied endorsement of a damages action for a violation of the prohibition against unlawful searches and seizures in *Katzberg* leads the Court to believe that the California Supreme Court would permit such an action.").

In addition to the *dicta* found in *Katzberg*, 29 Cal. 4th at 322-23:

> The California Constitution, like the New York Constitution, appears to have been drafted against a background expectation that common law remedies would continue to be available. Indeed, shortly after the adoption of the Constitution, California affirmed by statute that "[t]he Common Law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of the State of California, shall be the rule of decision in all the Courts of this State." Cal. Stats. 1850, ch. 95 [currently codified, with small changes, at Cal. Civ. Code § 22.2]. And as the *Katzberg* court noted, the English common law, by longstanding practice, provided a damages remedy for unlawful searches and seizures. [29 Cal. 4th at 322.] Thus it seems quite likely that the framers of the California Constitution expected and intended that violations of § 13 would have had a common law tort remedy.

*OSJ Pep Tenn. LLC*, 2014 U.S. Dist. LEXIS 142822, at *20.

## 2.     Constitutional Tort Analysis

If a court is unable to determine that the California Constitution provides "affirmative intent" to permit a damages act, "[that] determination … does not end [the] inquiry." *Katzberg*, 29 Cal. 4th at 324.

> Among the relevant factors in [the second step of the] analysis are whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and significance of the constitutional provision. If [a court] find[s] that these factors militate against recognizing the constitutional tort, [the] inquiry ends. If, however, [a court] find that these factors favor recognizing a constitutional tort, [the court] also shall consider the existence of any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages.

*Id.* at 317.

17

### a.  *Adequacy of Alternative Remedies*

A court shall "first consider the adequacy of existing remedies." *Katzberg*, 29 Cal. 4th at 325.

In *Katzberg*, the plaintiff sought to obtain monetary damages based on alleged procedural due process violations pursuant to the due process clause of art. I, § 7(a) and the court concluded that other, more expeditiously-available state law remedies were available to the plaintiff. *Id*. at 326-37. Because the "plaintiff had an adequate remedy," "[t]he availability of these adequate alternative remedies militate[d] against judicial creation of a tort cause of action for damages in th[at] circumstance[] presented." *Id*. at 327; *see also Degrassi v. Cook*, 29 Cal. 4th 333, 342-43 (Cal. 2002) (holding that "meaningful alternative remedies" were available to plaintiff alleging violations of the free speech clause, art. I, § 2(a)). Notably, the California Supreme Court did not consider the availability of federal remedies when analyzing the adequacy of existing remedies. *Id*. at 327 n.29 ("[W]e need not and do not determine what role the availability of a federal law remedy (for example, under 42 U.S.C., § 1983) should play in the determination whether a state action for damages should be recognized for violation of a state constitutional provision."). Instead, the court focused on the fact that a "name-clearing hearing" was available to the plaintiff pursuant to a "writ of mandate" under California law, prior to filing the suit. *Id*. at 326 & n.27 (noting the potential availability of damages).

This case is distinguishable from *Katzberg*, where it does not involve procedural due process and, therefore, the "adequate alternative remedies" available to the plaintiff in that case are simply not available in the instant action—under federal or state law. Under California law, unlike *Katzberg*, no adequate alternative remedy is available in this case. Arguably (although not argued by Defendants), common law assault/battery or negligence claims are available as a remedy for injuries similar to those alleged herein. However, California law affords public entities and employees a plethora of immunities to common law and statutory liability. *See* Cal. Gov. Code § 815 *et seq*. (public entity immunities); Cal. Gov. Code § 820 *et seq*. (public employee immunities). But those immunities do not afford protection against a constitutional claim where, "if [a state law statutory immunity] conflict[s] with [the] California Constitution['s provisions], the statute would have to yield to the Constitution." *See Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 961 (Cal. 2007).

Similarly, while it is undecided whether California courts consider federal claims in the context of

18

an adequate alternative remedy, *see Katzberg*, 29 Cal. 4th at 327 n.29, even if they did, 42 U.S.C. § 1983

claims are not an adequate alternative remedy where federal law does not permit *respondeat superior*

liability of entities, *see Monell*, 436 U.S. at 691, and affords the incredibly expansive affirmative defense

of qualified immunity to individuals against damages claims, *see Harlow v. Fitzgerald*, 457 U.S. 800,

815 (1982), unlike California law. *See* Cal. Gov. Code § 815.2(a) (imposing *respondeat superior* liability

under state law); *see also Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1243 (Cal. Ct. App.

2007); *Mendez v. County of Los Angeles*, 897 F.3d 1067, 1083 (9th Cir. 2018) ("We decline to apply a

doctrine that has evolved in the narrow and unique context of § 1983 claims in a way that would

undermine state law that expressly departs from the federal standard concerning qualified immunity.").

Therefore, redressing the alleged injuries based on common law claims under state law or federal

law—as opposed to a state constitutional rights damages action—does not afford an "equally effective

remedy for constitutional violations." *See Carlson v. Green*, 446 U.S. 14, 19 (1980); *see also Katzberg*,

29 Cal. 4th at 308-09 (discussing the U.S. Supreme Court's apparently changing views, from expansive

to more restrictive, on the adequacy and effectiveness of a remedy under the *Bivens* framework).

### b.     *Changes to Established Tort Law*

A court shall "next consider the extent to which a constitutional tort action would change

established tort law." *Katzberg*, 29 Cal. 4th at 327.

> [T]he California Constitution is, and always has been, a document of independent force, and [] the rights embodied in and protected by the state Constitution are not invariably identical to the rights contained in the federal Constitution. California cases long have recognized the independence of the California Constitution, and article I, section 24, of the California Constitution expressly confirms that the rights "guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

*Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 325-26 (Cal. 1997) (internal quotations & citations

omitted). Accordingly, the California Constitution should be interpreted as affording "rights [which]

extend equal or greater protection to those guaranteed by the federal Constitution." *Duffy v. Cal. State

Pers. Bd.*, 232 Cal. App. 3d 1, 9 (Cal. Ct. App. 1991); *see also Pruneyard Shopping Ctr. v. Robins*, 447

U.S. 74, 81 (1980) (States may grant "individual liberties more expansive than those conferred by the

Federal Constitution…"); William J. Brennan, Jr., *State Constitutions and the Protection of Individual

Rights*, 90 Harv. L. Rev. 489, 491 (1977) ("[S]tate courts cannot rest when they have afforded their

19

citizens the full protections of the federal Constitution. State constitutions, too, are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law."); *Schmid v. City of Petaluma*, 2012 U.S. Dist. LEXIS 14141, at \*4-5 (N.D. Cal. Feb. 6, 2012) (providing examples where state constitutional rights exceeded those of federal counterparts).

Accordingly, an interpretation of the California Constitution that afforded anything *less than* that which is available under the U.S. Constitution would be inconsistent with California law. *See People v. Brisendine*, 13 Cal. 3d 528, 551 (Cal. 1975) ("California citizens are entitled to greater protection under the California Constitution against unreasonable searches and seizures than that required by the United States Constitution…"). Therefore, because the allegations supporting the art. I, § 13 claims are cognizable as violations of the Fourth Amendment of the U.S. Constitution, it should follow that they are subject to "equal or greater protection," *Duffy*, 232 Cal. App. 3d at 9, under the California Constitution and, as a result, do not represent any "change [in] established tort law," *Katzberg*, 29 Cal. 4th at 327.

### c.    Nature and Significance of Constitutional Provision

A court shall "also consider the nature of the provision and the significance of the purpose that it seeks to effectuate." *Katzberg*, 29 Cal. 4th at 328.

The California Supreme Court has characterized the rights protected by art. I, § 13 as "vitally important," *In re William G.*, 40 Cal. 3d 550, 563 (Cal. 1985), and has been "emphatically clear that important as efficient law enforcement may be, it is more important that the right of privacy guaranteed by [the Fourth Amendment and art. I, § 13] be respected," *People v. Cahan*, 44 Cal. 2d 434, 438 (Cal. 1955) (addressing former art. I, § 19—current art. I, § 13).

### d.    Special Factors

At this point in the analysis, if a court concludes "that the considerations discussed above favor[] recognition of a constitutional tort," the court shall "also consider the existence of any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgment, avoidance of adverse policy consequences, considerations of government fiscal policy, practical issues of proof, and the competence of courts to assess particular types of damages." *Katzberg*, 29 Cal. 4th at 329 (fns. omitted). None of the special factors counsel hesitation in recognizing a damages action and Defendants do not argue otherwise.

20

Therefore, Defendants' motion for judgment on the Cal. Const. art. I, § 13 claims must be denied.

## G.   NINTH CLAIM: BANE ACT (CAL. CIV. CODE § 52.1(b))

The Bane Act, codified as Cal. Civ. Code § 52.1, "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018).

In this case, various Plaintiffs have alleged various Bane Act claims against Defendants, based on violations of both federal and state law. (ECF No. 1 [Complaint] at 12:1-14:14 [¶¶56-68].)

### 1.   Standing

Defendants argue that "the Bane Act does not provide a right of action for anyone other than decedent as it relates to decedent's own personal [claims]…" (ECF No. 9-1 [Memo.] at 17:7-18:11.) In support, Defendants cite to *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144-45 (Cal. Ct. App. 1995). There, a 19-year-old black man was shot and killed by Bay Area Rapid Transit District ("BART") police officers. *Id*. at 142. The plaintiffs, the decedent's parents, brought suit "for civil rights violations made actionable by the Bane Act," including the parents' Fourteenth Amendment "constitutional rights to parent and enjoy the society and companionship of their son." *Id*. at 142-43. The court dismissed the parents' claims, holding that "[t]he Bane Act is simply not a wrongful death provision. . . [I]t is limited to plaintiffs who themselves have been the subject of violence or threats." *Id*. at 144-45. This decision is inapplicable for several reasons.

First, the *Bay Area Rapid Transit Dist.* decision, as an intermediate state appellate decision, is not controlling or binding on this Court—the state's highest court is "the final arbiter of what is state law." *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266 (9th Cir. 2017). A federal court "must use [its] best judgment to predict" how the state's highest court would decide the issue. *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997). While the decisions of state appellate courts may be relevant, if those decisions conflict with the meaning that a federal court concludes that the state's highest court would give, then the state appellate court's interpretation must be rejected. *See*, *e.g.*, *Garmon v. County of Los Angeles*, 828 F.3d 837, 846-47 (9th Cir. 2016).

Second, the *Bay Area Rapid Transit Dist.* decision is no longer good law, where it was issued in 1995 when a previous version of the Bane Act was in effect, as reflected by its citation to the *Boccato*

21

decision for the proposition that "[the Bane Act] provides for a *personal* cause of action for the <u>victim of a hate crime</u>." *See Bay Area Rapid Transit Dist.*, 38 Cal. App. 4th at 144 (emphasis added). Subsequently, "in 2000, … the Legislature enacted Assembly Bill No. 2719 … to explain that *Boccato* erred" and "clarif[ied] that [the Bane Act] applies to an affected plaintiff 'without regard to his or her membership in a protected class identified by its race, color, religion, or sex, among other things.'" *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 842 (Cal. 2004).

Third, the *Bay Area Rapid Transit Dist.* decision's holding that the Bane Act is "limited to plaintiffs who themselves have been the subject of violence or threats," 38 Cal. App. 4th at 144-45, was superseded by more recent and controlling[6] Bane Act authority which recognizes that "reckless disregard" of or "deliberate indifference" to an underlying constitutional right states a claim. *See, e.g.*, *Reese*, 888 F.3d at 1045 ("reckless disregard"); *Rodriguez*, 891 F.3d at 799-802 ("reckless disregard"); *Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1196 (E.D. Cal. 2018) ("deliberate indifference"); *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 802 n.31 (Cal. Ct. App. 2017) ("deliberate indifference"). Specifically, Bane Act liability may be imposed "even if the defendant did not in fact recognize the [unlawfulness] of his act," *Cornell*, 17 Cal. App. 5th at 803, and, "<u>depending on the right alleged to have been interfered with, physical force is not required at all</u>," *id*. at 802 n.31 (emphasis added). *See also Reese*, 888 F.3d at 1045 ("[I]t is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

This form of Bane Act liability is compatible with claims alleging "unwarranted interference with the right to familial association," *see Keates*, 883 F.3d at 1236 (citing *Lee*, 250 F.3d at 686). "While the person who claims excessive force was directed at him or her can only raise a [F]ourth [A]mendment claim, a [family member] who claims loss of the companionship and society … raises a different constitutional claim." *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). There is no reason

---

[6] "[A] [Ninth Circuit] panel's interpretation of California law is binding in the absence of any subsequent indication from the California courts that [its] interpretation was incorrect." *Streit*, 236 F.3d at 565-66 (internal quotations & citations omitted).

that such a "different constitutional claim" cannot serve as the underlying constitutional right forming the basis of a Bane Act claim, where "plaintiffs can state a [42 U.S.C. §] 1983 claim without [] alleging that the official was trying to break up their family." *See Smith*, 818 F.2d at 1420 n.12; *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1992) (rejecting a requirement that plaintiffs "prove a wrongful intent directed specifically at them."). Rather, depending on the factual circumstances, plaintiffs need only demonstrate either "deliberate indifference" or a "purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson*, 610 F.3d at 55 (citing *Porter*, 546 F.3d at 1137). These elements are consistent with the requirements for stating a Bane Act claim. *See*, *e.g.*, *Reese*, 888 F.3d at 1045 ("reckless disregard"); *Cornell*, 17 Cal. App. 5th at 802 n.31 ("deliberate indifference").

Fourth, the *Bay Area Rapid Transit Dist.* decision's holding that the Bane Act is limited to persons who were "present" and "witness[ed] the actionable conduct," 38 Cal. App. 4th at 144-45, has also been superseded by controlling authority. In *Rodriguez v. County of Los Angeles*, the Ninth Circuit upheld Bane Act liability against supervisors whose "culpable action or inaction [] proximately caused [the plaintiffs'] injuries." 891 F.3d at 799. Specifically, the "actionable conduct" at issue was "knowing[] participat[ion] in creating and maintaining a culture of impunity for officers' use of unconstitutionally excessive force," "disabling or failing to follow procedures used to identify uses of excessive force," and "creat[ing] an environment where the mechanisms for supervision and control over the use of force operated ineffectively and sometimes not at all." *Id*. at 798-99. Accordingly, the plaintiffs in *Rodriguez* were not "present" when the supervisors created or fostered the environment creating Bane Act liability and, as result, did not "witness[] the actionable conduct." *See Bay Area Rapid Transit Dist.*, 38 Cal. App. 4th at 144-45. However, that did not prevent the Ninth Circuit from imposing Bane Act liability in those circumstances. *See Rodriguez*, 891 F.3d at 798-99; *see also Neuroth v. Mendocino County*, 2016 U.S. Dist. LEXIS 11109, at *21-22 (N.D. Cal. Jan. 28, 2016) (allegations that a sheriff "failed to train his employees and had implemented policies, practices, and customs that led to the [decedent]'s death" were sufficient to state a Bane Act claim). In other words, contrary to *Bay Area Rapid Transit Dist.*, a Bane Act claim need not be predicated "on personal involvement in violence or a threat of violence against a plaintiff." *Johnson v. Baca*, 2014 U.S. Dist. LEXIS 196976, at *43-45 (C.D. Cal. Mar. 3, 2014).

\\\

23

2. **"Duplicative, Superfluous and Unnecessary" Allegations**

Defendants argue that the allegations contained in Plaintiffs' Complaint explaining each independent basis for Bane Act liability (ECF No. 1 [Complaint] at 12:1-14:14 [¶¶56-68]) are "duplicative, superfluous and unnecessary," such that they "should be dismissed as duplicative or, in the alternative, stricken from the pleadings." (ECF No. 9-1 [Memo.] at 18:12-26.)

Initially, Plaintiffs observe that Defendants did not timely move to strike any allegations from Plaintiffs' Complaint and, on that basis, are now precluded from doing so. *See* Fed. R. Civ. P. 12(f)(2) (requiring a party to move to strike "before responding to the pleading"). In any event, even if Defendants had timely made such a motion, it would have been denied. *See*, *e.g.*, *Martinez v. City of West Sacramento*, 2019 U.S. Dist. LEXIS 19511, at *18-20 (E.D. Cal. Feb. 4, 2019) ("That a complaint is long and contains irrelevant material does not necessarily mean it violates [Fed. R. Civ. P.] 8.").

On the merits, Defendants' argument is that Plaintiffs' Complaint is *too specific* about the bases of Defendants' alleged liability. Why Defendants would file a motion seeking to limit Plaintiffs' Complaint to providing *less information* about alleged theories of liability is a mystery and, frankly, a waste of this Court's time. The Bane Act "provides an individual with a statutory mechanism by which to seek relief, in a civil case, for a constitutional violation." *Barsamian v. City of Kingsburg*, 597 F. Supp. 2d 1054, 1064 (E.D. Cal. 2009). Bane Act liability may be derived from or predicated on the violation of "rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of [California]…" Cal. Civ. Code § 52.1(b) & (c); *see also Johnson v. Shasta County*, 83 F. Supp. 3d 918, 935 (E.D. Cal. 2015) (recognizing that the Bane Act could be used to vindicate violations of both federal and state constitutional provisions, simultaneously).

Plaintiffs' Complaint alleges independent, stand-alone violations of both federal and state constitutional rights. (*See* ECF No. 1 [Complaint] at 7:15-11:24 [¶¶33-55] (First through Fourth Claims).) In addition, Plaintiffs' Complaint essentially reincorporates those same alleged violations as predicates for imposing Bane Act liability. (*See* ECF No. 1 [Complaint] at 12:1-14:14 [¶¶56-68] (Fifth Claim).) Defendants cite no authority for the proposition that this is improper pleading practice or disallowed. *See*, *e.g.*, *Paterno*, 74 Cal. App. 4th at 104 ("That a given set of facts fortuitously supports liability on two legal theories is not a principled reason to deny a party the right to pursue each theory.").

24

While Plaintiffs are under no obligation to explain their legal strategies, Plaintiffs do note that there are several advantages to securing Bane Act liability, including the potential availability of a per-defendant "civil penalty" and "reasonable attorney's fees," *see* Cal. Civ. Code § 52.1(b) & (i), that may not otherwise be available in connection with other claims.

Therefore, Defendants' motion for judgment on the Bane Act claims must be denied.

## IV.   <u>CONCLUSION</u>

For the reasons stated, Plaintiffs respectfully requests this Court to deny Defendants' Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. To the extent that any claim is found to be insufficiently alleged, this Court "should grant leave to amend …, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Dated: March 7, 2019

Respectfully Submitted,

By: _____
    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

     Attorneys for Plaintiffs
     ESTATE OF CARMEN MENDEZ,
     JORGE MENDEZ, SR., JORGE MENDEZ, JR.,
     KYLAND RILEY, ROSARIO SANCHEZ,
     BERTHA MENDEZ, and DOMINGO MENDEZ