**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ESTATE OF CARMEN MENDEZ, JORGE MENDEZ, SR., JORGE MENDEZ, JR., KYLAND RILEY, ROSARIO SANCHEZ, BERTHA MENDEZ, and DOMINGO MENDEZ,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**CITY OF CERES, CERES POLICE DEPARTMENT, BRENT SMITH, and DOES 1 TO 50,**<br><br>    **Defendants.** | **1:18-CV-01677-LJO-BAM**<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**(ECF No. 9)** |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

   Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

1

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **INTRODUCTION**

On August 18, 2018, a City of Ceres police officer fatally shot fifteen-year-old Carmen Mendez following pursuit of a vehicle in which Mendez was a passenger. ECF No. 1 at ¶¶ 18-19. Relatives, including decedent's father (collectively, "Plaintiffs"), brought suit against the City of Ceres, the Ceres Police Department, Brent Smith (Chief of Police for Ceres), and Does 1-50 (collectively, "Defendants"), alleging various claims under 42 U.S.C. § 1983, and under the constitution and laws of California. Before the Court is a Motion for Judgement on the Pleadings filed by Defendants. ECF No. 1. The Court finds it appropriate to rule on Defendant's motion without oral argument. *See* Local Rule 230(g). For the following reasons, the Court GRANTS IN PART and DENIES IN PART the motion.

## III. **BACKGROUND**

On August 18, 2018, fifteen-year-old Carmen Mendez ("Carmen") was a passenger in a vehicle being pursued by police for reasons not stated in Plaintiffs' complaint. *See* ECF No. 1 at ¶ 19. According to the allegations, when the vehicle eventually came to a stop, Carmen exited and ran on foot toward a nearby orchard. *Id*. at ¶ 20. It is further alleged that, while he ran, Carmen was unarmed and "non-threatening," but, nonetheless, Carmen was shot in the back several times by at least one police officer. *Id*. at ¶¶ 21-22. The complaint additionally alleges that "[o]ther law enforcement officers at the scene reacted with anger to [the] unnecessary shooting" of Carmen. *Id*. at ¶ 25. Carmen succumbed to his injuries. *Id*. at ¶ 26.

On December 10, 2018, Carmen's father, two brothers, aunt, grandmother, and grandfather filed

suit against Defendants, with Carmen's father, Jorge Mendez, Sr., also filing on behalf of Carmen's estate, as one of Carmen's successors-in-interest. ECF No. 1 at ¶¶ 5-11. The Plaintiffs' suit alleges three claims under 42 U.S.C. § 1983 ("§ 1983"), one claim under California's constitution, and four claims under California state law. *See generally* ECF No. 1. Absent from the lawsuit is Carmen's mother, Stephanie Beidleman, though she did serve, separate from this action, a notice of tort claims on the City of Ceres and others.[1] ECF Nos. 9-1 at 1-2, 13-1 at Ex. 1.

On February 21, 2019, Defendants filed their Motion for Judgment on the Pleadings ("motion"), alleging nine deficiencies in Plaintiffs' suit that, they claim, entitle Defendants to judgment under Federal Rule of Civil Procedure 12(c). *See generally* ECF No. 9-1. Defendants urge this Court to find: that Plaintiffs have failed to meet the pleading standard under *Twombly/Iqbal* throughout their complaint;[2] that Plaintiffs have failed to join a necessary party; that certain claims and parties are duplicative; that certain Plaintiffs are ineligible for relief under certain claims; and that certain novel claims have no legal basis. *Id.* On March 7, 2019, Plaintiffs responded, denying each ground raised by Defendants and urging this Court to allow their suit to proceed as filed. ECF No. 11. Defendants' Reply was filed on March 14, 2019. ECF No. 13.

## IV. <u>LEGAL STANDARD</u>

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12. A motion filed under Rule 12(c) and one filed under Rule 12(b) are "functionally identical," with timing being the "principal difference" between them. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (1989). Because the motions are functionally identical, the standard of review under both is the same. *Gregg v. Hawaii, Dept. of Pub. Safety*, 870 F.3d 883, 887 (2017). "A judgment on the

---

[1] The Court takes judicial notice of the tort claims notice under Federal Rule of Evidence 201, which permits judicial notice of "a record of a state agency not subject to reasonable dispute." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004).

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

3

pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (1998). Like a motion brought under Rule 12(b)(6), leave to amend a pleading "should be granted even if no request is made *unless* amendment would be futile." *Pac. W. Grp., Inc. v. Real Time Sols., Inc.*, 321 F. App'x 566, 569 (2008) (emphasis original).

## V. <u>ANALYSIS</u>

Defendants urge this Court to find that Plaintiffs' Complaint is substantially deficient on nine grounds. ECF No. 9-1. Specifically, Defendants argue that: (1) Plaintiffs have failed throughout their complaint to allege sufficient facts under *Twombly/Iqbal*; (2) the case must be stayed because Plaintiffs failed to join a necessary party, Carmen's mother; (3) the Ceres Police Department must be dismissed from the action since naming it and the City of Ceres is duplicative; (4) the Ceres Chief of Police, Brent Smith ("Smith"), must be dismissed from the action because naming him in his official capacity is duplicative and no allegations support naming him in his individual capacity; (5) any *Monell* claims[3] have been insufficiently pled and must be dismissed; (6) Plaintiffs' two claims for right of intimate association are duplicative, and in any event are inapplicable to any relative other than Carmen's father and brothers; (7) Plaintiffs' cause of action brought under California's constitution fails to state a claim upon which relief can be granted; (8) Plaintiffs' Bane Act claim fails to state a claim upon which relief may be granted and can only be brought on behalf of Carmen's estate; and (9) Plaintiffs include duplicative, superfluous language in their Bane Act claim that should be stricken. *Id.*

Each argument is addressed in turn below.

## A. <u>Joinder of Carmen's Mother</u>

### 1. <u>Contentions</u>

Defendants urge this Court to find that Plaintiffs failed to join a necessary party—Carmen's

---

[3] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

mother—under Federal Rule of Civil Procedure 19 and that, as a result, this case must be stayed until she is joined. ECF Nos. 9-1 at 1-2, 13 at 3-4. Defendants base their assertion on the fact that Carmen's mother is a successor-in-interest of Carmen's estate, together with Carmen's father, as Carmen was a minor at the time of his death. *Id*.

Plaintiffs respond that Defendants' objection fails for two procedural reasons: Defendants have failed to parse which claims they believe require joinder of Carmen's mother, and Defendants' objection was waived when Defendants failed to raise the issue in their first responsive pleading. ECF No. 11 at 2. Plaintiffs also contend, substantively, that Carmen's mother is not a necessary party because Carmen's mother can bring a claim against Carmen's estate should Carmen's father, as successor-in-interest, prevail in this action. *Id*. at 2-3. As a final matter, Plaintiffs argue that, should the Court find Carmen's mother a necessary party, the cure is to name her as a nominal defendant. *Id*. at 3.

## 2. <u>Law and Analysis</u>

Federal Rule of Civil Procedure 19 requires joinder of necessary parties, with certain exceptions. Fed. R. Civ. P. 19. "A Rule 19 motion poses three successive inquiries," *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) (internal quotations and citation removed), which were not briefed or analyzed fully by the parties here. The first inquiry requires determining whether a party is necessary pursuant to the rule. *Id*. That inquiry involves a two-pronged analysis, pursuant to which the Court examines first "whether complete relief can be afforded if the action is limited to the existing parties," and second, "whether the absent party has a legally protected interest in the subject of the action, and if so, whether the party's absence will impair or impede the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest." *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014) (internal quotations omitted). Either a negative answer to the first prong or an affirmative answer to the second prong means a party is necessary. If a party is not necessary, the inquiry stops. If a party is necessary, the Court engages, in order, the successive steps of the Rule 19 inquiry to determine if the necessary party is indispensable and

whether, in fact, the action cannot proceed without that party. *Peabody*, 610 F.3d at 1078.

### a. The Wrongful Death Claim

The analysis of how Rule 19 applies to the wrongful death claim brought under Cal. Code Civ. Proc. § 377.60 is relatively straightforward, as the case of *Ruttenberg v. Ruttenberg*, 53 Cal. App. 4th 801, 808 (1997), instructs that heirs for such claims "have a mandatory duty to join all known omitted heirs in the 'single action' for wrongful death" because "wrongful death actions are considered to be 'joint, single and indivisible.' " Indeed, "only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs." *Ruttenberg*, 53 Cal. App. 4th at 807. Notwithstanding this, "a non-joined heir is not an 'indispensable party' to a wrongful death action" under California law. *Id.* at 807.[4]

"In federal procedure, failure to join necessary parties is waived if objection is not made in defendant's first responsive pleading; it is only the absence of an indispensable party which may (possibly) be raised later."[5] *Citibank, N.A. v. Oxford Properties & Fin. Ltd.*, 688 F.2d 1259, 1262 n.4 (9th Cir. 1982). Because a non-joined heir is not indispensable for purposes of a wrongful death claim, the Court concludes that Defendants waived their argument for joinder, as it relates to this claim, by failing to object in their first responsive pleading.

The Court, however, may raise *sua sponte* joinder under Rule 19. *CP Nat. Corp. v. Bonneville*

---

[4] The Court is persuaded that the same outcome would be reached under the Federal Rules of Civil Procedure, for the simple reason that an existing party might adequately represent the interests of Carmen's mother, *see* § b(2) *below*, meaning this Court need not decide whether *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), dictates the use of federal versus state civil procedure in this situation.

[5] California law is substantially similar: "The party against whom a complaint or cross-complaint has been filed may object, by demurrer or answer … to the pleading on any one or more of the following grounds: … (d) There is a defect or misjoinder of parties." Cal. Civ. Proc. Code § 430.10. *See also DeFranco v. United States*, 18 F.R.D. 156 (1955) (citing line of California authority). As a second matter, in their reply, Defendants misread (and misargue to the Court) the law on waiver of objection for nonjoinder. ECF No. 13 at 3. Defendants state, regarding *Citibank, N.A. v. Oxford Properties & Fin. Ltd.*, 688 F.2d 1259, 1262 n.4 (9th Cir. 1982): "First of all, that was a case about lienholders and had nothing to do with claims like those in the instant matter. Second, Plaintiffs' [sic] intentionally failed to quote important portions of footnote 4 that 'under the law of New York … [the] objection is waived if the mortgagor does not raise it at the beginning of the litigation.' " *Id.* First, the subject matter of the case will not affect the application of Fed. R. Civ. P. 19, unless a statute or other law specifically provides for that. Second, Plaintiffs appropriately omitted from their analysis the paragraph in *Oxford Properties* that describes joinder under New York law; that law is not relevant here. Plaintiffs correctly analyzed joinder of necessary parties under federal law when they quoted from the paragraph beginning: "In federal procedure, failure to join . . . ." *Oxford Properties*, 688 F.2d at 1262 n.4.

*Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991) ("The absence of 'necessary' parties may be raised by reviewing courts *sua sponte* …"). The issue of joinder may be raised to protect the interests of an absent party. *McCowen v. Jamieson*, 724 F.2d 1421, 1424 (9th Cir. 1984) (raising joinder under Rule 19 *sua sponte*, the court stated: "We are acting to protect the [absent party's] interest …"). Consideration of judicial economy is also appropriate, although judicial economy is not a factor specified in Rule 19. *Shimkus v. Gersten Companies*, 816 F.2d 1318, 1322 (9th Cir. 1987). Here, Carmen's mother is a necessary party, and her interest in the wrongful death claim will be impaired by the complete foreclosure of her ability to bring her own such claim in a separate suit under California law. Nonjoinder of Carmen's mother also presents a substantial probability of one or more suits concerning the same claims and issues being brought subsequent to final adjudication of this case. That burdens the courts, and new controversies among the parties might be invited. Therefore, the Court finds that joinder of a necessary party, Carmen's mother, is required in order to protect her interest and for reasons of judicial economy, including the possibility of a separate suit or suits related to the wrongful death claim in this matter.[6]

Defendants' motion to stay pending joinder is DENIED; however, the Court orders, *sua sponte*, joinder of Carmen's mother as a Plaintiff to the wrongful death claim.

//

//

//

---

[6] In addition to Carmen's mother potentially filing a suit concerning the exact substance of this case, *Ruttenberg* also instructs:

> Plaintiffs may bring a wrongful death action without joining all known heirs, and the court may try that action, but in such a case plaintiffs proceed at their peril. An omitted heir's right to a remedy in these circumstances supports the statutory purpose of limiting wrongful death actions to a single proceeding. We find that [non-joined plaintiff] has a claim for damages against the [ ] defendants for not joining her in the wrongful death action.

53 Cal. App. 4th, at 809. Plaintiffs may be inviting further litigation after the instant matter has concluded for failing to join Carmen's mother.

### b.    The Remaining Claims Under § 1983, and California's State Law and Constitution

#### (1)    Complete Relief

Regarding the remaining claims, the Court finds that complete relief can be afforded to those already party to the action, as the first portion of Rule 19 "is concerned only with 'relief as between the persons already parties, not as between a party and the absent person whose joinder is sought.' " *Eldredge v. Carpenters 46 N. Cal. Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (quoting 3A Moore's Federal Practice P 19.07-1(1), at 19-128 (2d ed. 1980)). Plaintiffs and Defendants make no argument that current parties cannot be provided complete relief in relation to the present parties, and the Court finds nothing to support a determination otherwise. Relief available to current Plaintiffs vis-à-vis Defendants is in no way limited by the absence of Carmen's mother, and the same is true of Defendants vis-à-vis current Plaintiffs.

#### (2)    Legally Protected Interest

Evaluating the second prong of 'necessity' as it relates to the remaining claims, the Court starts with Defendants' incompletely developed suggestion that the decedent's mother is a necessary party because she is a successor-in-interest to Carmen's estate. ECF No. 9-1 at 1-2. Defendants do not explain why, as a successor-in-interest, Carmen's mother is necessary, but the Court will begin by assuming that Defendants are suggesting that she has a legally protected interest in the proceedings. A successor-in-interest would be deemed necessary if both of the following are true: 1) the person has a legally protected interest in the subject of that action; and 2) either protection of that interest will be impaired by absence, or the person's absence will subject an existing party to multiple, inconsistent legal obligations with respect to that interest. Fed. R. Civ. P. 19.

##### (a)    Successor-in-Interest

The Court notes that Defendants do not cite any authority suggesting that all successors-in-interest must be party to § 1983 claims, and the Court has found nothing to support that proposition.

8

Indeed, as to the first claim for unreasonable force under § 1983 and the fifth claim for unreasonable force under California's Bane Act (the only claims brought on behalf of Carmen's estate by a successor-in-interest), should Carmen's father recover on behalf of the estate, Carmen's mother in turn may recover from the estate as an additional successor-in-interest. The simple reason that Carmen's mother is a successor-in-interest does not require her joinder. The Court's analysis, however, would be incomplete if it rested here.

(b) <b><u>Res Judicata and Collateral Estoppel</u></b>

The issue of joinder becomes murkier when the Court evaluates the necessity of Carmen's mother as it relates to the doctrines of collateral estoppel and res judicata. The Supreme Court has long recognized the applicability of both doctrines to claims brought under § 1983. *See, e.g., Preiser v. Rodriguez*, 411 U.S. 475, 497 (1973) (noting with approval the application of res judicata to § 1983 cases by federal courts). In *Allen v. McCurry*, 449 U.S. 90, 96-97 (1980), the Court noted that it had previously given "implicit approval" to the finding of lower courts "that § 1983 presents no categorical bar to the application of res judicata and collateral estoppel concepts." The *Allen* Court only solidified that position and made it explicit. 449 U.S. at 94-105.

The Ninth Circuit also has recognized that California's application of res judicata and collateral estoppel may extend to family members in actions such as the one before this Court because the concept of privity in California "has been expanded [ ] to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify the application of the doctrine of collateral estoppel." *Aguilar v. Los Angeles County*, 751 F.2d 1089, 1093 (9th Cir. 1985) (citing federal district court and state appellate court cases). Under this formulation of privity, the Ninth Circuit affirmed the finding of a son as his parents' privy in a medical negligence action for the son's injuries, and the court upheld dismissal of the parents' action for failure to join a necessary party—their son. *Id.* at 1093-94. The Ninth Circuit affirmed the dismissal because a California state court might apply, though not certainly, collateral estoppel principles to the son's suit if his parents' action

9

proceeded separately in federal court. *Id.* at 1093 ("a California court could well apply the collateral estoppel doctrine to bar [son's] suit if his parents' suit is allowed to proceed and proves unsuccessful, since the underlying issue of the County's negligence is identical in both suits"). That risk, even though not definite, was sufficient under the joinder inquiry, according to the court. *Id.* at 1094. The Ninth Circuit also considered other applications of res judicata and collateral estoppel against family members by California courts in reaching its decision. *Id.* at 1093-94.

Yet, "later decisions have dulled *Aguilar*'s sharp edge." *Blumberg v. Gates*, 204 F.R.D. 453, 455 (C.D. Cal. 2001). Under these cases, the Ninth Circuit changed the calculus for determining whether an absent party's legally protected interest will be impaired or impeded if litigation proceeds in the party's absence. Under the new calculus, the court recognized that "[i]mpairment may be minimized if the absent party is adequately represented in the suit." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The Ninth Circuit has stated:

> the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed. R. Civ. P. 24(a). Consequently, we will consider three factors in determining whether existing parties adequately represent the interests of the [absent parties]: whether "the interests of a present party to the suit are such that it will undoubtedly make all" of the absent party's arguments; whether the party is "capable of and willing to make such arguments"; and whether the absent party would "offer any necessary element to the proceedings" that the present parties would neglect.

*Shermoen v. United States,* 982 F.2d 1312, 1318 (9th Cir. 1992); *see also Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998).

Here, the Court need not decide whether the interests of Carmen's mother would be represented adequately by an existing party, such as Carmen's father. Carmen's mother clearly has an interest in this litigation, and the Court has ordered that she be joined for purposes of the wrongful death claim. *See* § A(2)(a) *above*. Given similar considerations as those above, concerning judicial economy and possible impairment of the mother's interests should this suit go forward without her, the Court finds that

Carmen's mother should be joined to all claims in which she has an interest either in her personal capacity or as successor-in-interest.

For the foregoing reasons, the Court ORDERS that Carmen's mother, Stephanie Beidleman, be joined to this action.

### (3)    Waiver

Had the Court not ordered joinder of Carmen's mother *sua sponte*, Defendants' request for joinder would face an additional problem to their successor-in-interest argument. As noted previously, "[i]n federal procedure, failure to join necessary parties is waived if objection is not made in defendant's first responsive pleading; it is only the absence of an indispensable party which may (possibly) be raised later." *Oxford Properties*, 688 F.2d at 1262 n.4. Here, Defendants' belated objection would fail at the second and third stages of the three successive inquiries for necessary joinder: whether joinder is feasible and whether in equity and good conscience the suit should be dismissed. Neither party fully briefed these issues, and Defendants point to no authority at all to support their position that Carmen's mother is indispensable. In that critical omission, Defendants fail in their burden of persuasion. Because Defendants do not carry their burden, the Court need not delve deeper into this issue. *Shermoen*, 982 F.2d at 1317 ("The moving party has the burden of persuasion in arguing for dismissal."). Accordingly, the Court declines to find Carmen's mother indispensable even if she is necessary, and thus, Defendants waived their objection when they did not include it in their first responsive pleading.

For all of the foregoing reasons stated in § A, Defendants motion to stay the proceedings and join Carmen's mother is DENIED, but as noted above, the Court orders joinder *sua sponte*.

### B.    Request to Dismiss Ceres Police Department

### 1.    Contentions

Defendants move to dismiss the Ceres Police Department ("Police Department") from the action, arguing that naming the Police Department as a defendant is duplicative of naming the City of Ceres ("the City"), which is also a defendant in the action. ECF Nos. 9-1 at 4, 13 at 4-5. Plaintiffs counter that

that the Police Department is a separately suable entity under California law, which means they may be named as a defendant. ECF No. 11 at 4-5. Plaintiffs do not specify separate facts or theories of liability for the Police Department as compared to the City, and neither Plaintiffs nor Defendants parse their arguments separately for claims brought under § 1983 versus those brought under state law.

### 2. **Law and Analysis**

The capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17. California law, in turn, provides that a "public entity may sue and be sued." Cal. Gov. Code § 945. The Ninth Circuit has found that, in the absence of a state court decision indicating otherwise, the definition of "public entity" includes a police department. *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1986). Thus, in California, a police department "may be sued in Federal court." *Id.*; *see also Streit v. County of Los Angeles*, 236 F.3d 552, 565-67 (9th Cir. 2001) (finding, in the context of a § 1983 action, that local law enforcement agencies may be sued in federal court). The pronouncement from the Ninth Circuit is clear: "Municipal police departments … can be sued in federal court for alleged civil rights violations." *Karim-Panahi v. Los Angeles*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988).

Without discussion of the cases cited above, Defendants point to *United States v. Kama*, 394 F.3d 1236 (9th Cir. 2005), and district court cases that rely on *Kama*, in support of their position that the police department must be dismissed from this suit. ECF No. 13 at 5. But *Kama* is distinguishable from this case in important ways that render it unpersuasive. First, it is the concurring opinion, signed by one judge, that states as dictum, "municipal police departments and bureaus are **generally** not considered 'persons' within the meaning of 42 U.S.C. § 1983." *Kama*, 394 F.3d at 1239-40 (emphasis added). Second, *Kama* concerned a suit for return of seized property under Federal Rule of Criminal Procedure 41(g), brought against law enforcement in Oregon, not California—which facts are not relevant to the matter currently before this Court. *Id.* at 1236-39. The context of *Kama* renders it inapposite. The Court

1 joins other district courts that have found the same.[7]

2     Plaintiffs may name the Ceres Police Department as a defendant under California law, even if the

3 City is ultimately liable. What Plaintiffs would have to allege (and prove) in order to establish that a

4 police department acted as a "person" under the color of law for purposes of § 1983 liability is an

5 entirely different matter not before the Court on this motion.

6     Having addressed whether the Police Department can be named as a Defendant under California

7 law, a few words are warranted on whether naming it is duplicative of naming the City. Defendants

8 argue that the Police Department should be dismissed as a redundant defendant, citing *Abeytia v. Fresno*

9 *Police Dep't*, No. 1:08-cv-01528 OWW GSA, 2009 WL 1674568 (E.D. Cal. June 12, 2009). ECF Nos.

10 9-1 at 4, 13 at 4-5. The somewhat cursory reasoning provided in *Abeytia* is premised on the assumption,

11 rejected above, that a municipal police department is not a "person" under § 1983. No. 1:08-cv-01528

12 OWW GSA, 2009 WL 1674568, at *9. The court in *Abeytia* cited other district court cases to support its

13 conclusion; the Ninth Circuit cases *Shaw*, *Streit*, and *Karam-Panahi*, cited above, were not assessed. *Id.*

14     This Court adopts now the reasoning of *Payne v. County of Calaveras*, No. 1:17-cv-00906-DAD-

15 SKO, 2018 WL 6593347, at *4 (E.D. Cal. Dec. 14, 2018). In *Payne*, the court was faced with similar

16 arguments from litigants:

17         [D]efendants … argu[e] that the issue is not whether a sheriff's department
        is suable in federal court, but rather, "[t]he question is whether a
18         department of a municipality can be sued separately *in addition* to the
        municipality for the same alleged wrongs." [ ]

19

20 _____

21 [7] *See, e.g., Payne v. Cty. of Calaveras*, No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347 (E.D. Cal. Dec. 13, 2018);
*Rodgers v. City of Pasadena*, No. 2:16-cv-03616-CAS(Ex), 2016 WL 7240135 (C.D. Cal. Dec. 12, 2016); *Martinez v. City of
Colton*, No. EDCV16-702-CAS(DTBx), 2016 WL 4547149 (C.D. Cal. Aug. 3, 2016); *Shay v. Cty. of Los Angeles*, No. 2:15-
22 cv-04607-CAS-RAO, 2015 WL 6513632 (C.D. Cal. Oct. 26, 2015); *Olvera v. Cty. of Sacramento*, 932 F. Supp. 2d 1123
(E.D. Cal. 2013) (explaining, in n.17, that *Kama* does not stand clearly for the proposition that law enforcement agencies in
California cannot be sued in federal court but noting the number of decisions in the Eastern District of California citing *Kama*
23 in support of exactly that). As the court in *Rodgers v. City of Pasadena*, *supra*, explained: "[G]iven that in *Streit*, the Ninth
Circuit specifically held that the Los Angeles County Sheriff's Department is subject to liability under Section 1983,
24 whereas *Kama* concerned whether the Portland Police Bureau can be considered a 'person' under Section 844(a) of the
Controlled Substances Act, the Court finds *Streit* to be more relevant and persuasive here. Accordingly, the Court declines to
25 dismiss the [police department] on the grounds that it is improperly named as a distinct entity from the City." No. 2:16-cv-
03616-CAS(Ex), 2016 WL 7240135, at *3.

> If that is indeed the question, it must be also be answered in the affirmative. Defendants have not directed the court to any legal authority requiring the court to dismiss a municipal entity as a redundant defendant where the municipality itself is also named as a defendant. On the contrary, in *Streit*, the Ninth Circuit explicitly held that because the Los Angeles Sheriff's Department "acts for the County in its capacity as the administrator of the Los Angeles County jails, ... *both* the LASD and the County are subject to liability under section 1983." 236 F.3d at 555–56 (emphasis added).

No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347, at *3-4.

In the absence of authority showing that the Ninth Circuit subsequently reaching a different conclusion from that reached in *Streit*, this Court, like the court in *Payne*, finds that both a municipality and the municipality's police department may be named in an action under California law if both are amenable to suit. Accordingly, Defendants' motion to dismiss the Ceres Police Department from this suit is DENIED.

## C.   Fourth Amendment Unreasonable Force Claims: Municipal Liability

### 1.   Contentions

Defendants move for dismissal of Plaintiffs' Fourth Amendment *Monell* claims against the City of Ceres, arguing that the complaint fails to state claims upon which relief may be granted under any of Plaintiffs' *Monell* theories: inadequate training, supervision, or disciplining of Does 1 to 25, "resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy concerning the use of excessive and unreasonable force." ECF No. 9-1 at 11-15. Defendants also argue that the prior settlements and pending cases listed by Plaintiffs are insufficient to establish a pattern of constitutional violations sufficient for notice due to the cases' agedness and their lack of final adjudication or court findings regarding excessive force. ECF Nos. 9-1 at 14-15, 13 at 5-6.

Plaintiffs counter that a relaxed pleading standard applies to *Monell* claims for pre-discovery municipal liability claims and that allegations made on information and belief are permitted, citing unpublished district court cases in support of their position. ECF No. 11 at 5-8. They likewise contest Defendants' assertion that the settlements and pending litigation listed in the pleading provide

inadequate notice of systemic problems. ECF No. 11 at 7-8.

## 2. **Law and Analysis**

### a. **§ 1983 and *Monell***

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). Pursuant to *Monell*, a "municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). In order to recover, a plaintiff "must prove that action pursuant to official municipal policy caused their injury." *Id.* at 60-61 (internal quotations and citation omitted).

Specifically, for municipal liability, a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (internal quotation and citation omitted). A plaintiff additionally may prove policy or custom:

> (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (international quotations and citation omitted). Finally, "a local governmental entity may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights," but only if that policy of inaction is "the result of a conscious or deliberate choice … made from among various alternatives." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (internal quotations and citations omitted).

### b. Pleading Standard

In *A.E. v. County of Tulare*, 666 F.3d. 631, 637 (9th Cir. 2012), the Ninth Circuit clarified that the pleading standard articulated in *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), extends to *Monell* claims. "[A] plaintiff asserting a *Monell* claim, including a claim based on a policy, practice, or custom, must contain sufficiently detailed factual allegations 'to give fair notice and to enable the opposing party to defend itself effectively' and which 'plausibly suggest an entitlement to relief.'" *J.M. By & Through Rodriguez v. County of Stanislaus*, 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *4 (E.D. Cal. Nov. 7, 2018) (quoting *Starr*, 652 F.3d at 1216). The Ninth Circuit also opined that the factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.

In this matter, Plaintiffs cite unpublished district court cases in support of their argument that a relaxed pleading standard applies, ECF No. 11 at 6, and while some courts have applied a relaxed pleading standard, this has not been universal within the Eastern District of California or other courts within the Ninth Circuit. *J.M.*, 2018 WL 5879725, at *4. Such application is contrary to Ninth Circuit precedent. *Id.* For that reason, this Court applies the pleading standard articulated in *Starr* to Plaintiffs' complaint.

### c. Inadequate Disciplining of Does 1 to 25

For a *Monell* claim of inadequate discipline, "*evidence* of inaction—specifically, failure to investigate and discipline employees in the face of widespread constitutional violations—can support an inference that an unconstitutional custom or practice has been unofficially adopted by a municipality." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1234 n.8 (9th Cir. 2011) (emphasis original). In *McRorie v. Shimoda*, a case involving allegations that prison guards injured twenty-nine people during a prison shakedown, the Ninth Circuit explained the inference in the context of the facts before it: "[p]olicy or custom may be inferred if, after the [unconstitutional event], [ ] officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error."

16

795 F.2d 780, 784 (9th Cir. 1986). Because the record was silent on what actions officials had taken, if any, the court decided that, on remand, the plaintiff "should be given the opportunity to amend his complaint to make allegations about the officials' conduct." *Id*. Thus, a complaint "must contain sufficient allegations of underlying facts" as to the disciplining of officers in relation to the alleged constitutional violations in order to support a *Monell* claim for inadequate discipline. *Gonzalez v. County of Merced*, 289 F. Supp. 3d 1094, 1116 (E.D. Cal. 2017) (quoting *Starr*, 652 F.3d at 1216).

In the instant matter, there are no allegations regarding whether the Doe defendant who shot Carmen was disciplined for his or her actions, or whether the prior or pending cases provided as support in Plaintiffs' complaint involve failures to discipline for those alleged unreasonable force violations. Plaintiffs have only included one conclusory statement—that the Doe defendants who shot Carmen or failed to intercede "were inadequately … disciplined" as a result of "lack of proper training, pursuant to policy, or the result of the lack of policy." ECF No. 1 at ¶¶ 29, 36, 52, and 59. That one statement is not sufficient to support a claim that Defendants have adopted an unconstitutional practice or custom of inadequate discipline in relation to excessive force.

For the foregoing reasons, Defendants' motion to dismiss the *Monell* claim against the City is GRANTED as it relates to inadequate discipline.

**d.      Inadequate Training or Supervision of Does 1 to 25**

"A local governmental entity's failure to train its employees can [ ] create § 1983 liability where the failure to train 'amounts to deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *City of Canton*, 489 U.S. 378, 388-89 (1989). It is "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality" that the municipality may be liable. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). In addition, "the identified deficiency in a local governmental entity's training program must be *closely related* to the ultimate injury." *Lee*, 250 F.3d at 681 (internal quotations, modifications, and citation omitted) (emphasis original). In other words, a plaintiff must

prove that his or her constitutional injury "would have been avoided" had the governmental entity trained its employees properly. *Id.* (quoting *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)).

Like failure to train, failure to supervise can constitute a policy of inaction that amounts to deliberate indifference to a plaintiff's constitutional rights. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). "This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* (internal quotations and citations omitted). "Mere negligence in training or supervision [ ] does not give rise to a *Monell* claim." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotations and citation omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Finally, the Ninth Circuit has observed that there is "no principled reason to apply a different standard in adequate supervision" cases than that applied in inadequate training. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); *see also Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (observing that the requirements announced by the Supreme Court for negligent training claims have been applied since to negligent supervision and hiring claims).

Here, Plaintiffs allege that the City and the Police Department failed to train or supervise adequately the Doe defendants who shot Carmen or who failed to intercede in the shooting, and that the inadequacy of training or supervision is what led to the shooting. That allegation is contextualized by the assertion that Carmen was unarmed, fleeing, and non-threatening when he was shot in the back without warning, providing a basis for an excessive force claim. Carmen's shooting under those asserted circumstances is itself linked to the notice evidence Plaintiffs present, pre-discovery, to demonstrate a

pattern of constitutional violations that would permit an inference of deliberate indifference: the list of alleged prior similar constitutional violations. If those alleged prior instances are sufficiently similar to the averred circumstances of Carmen's shooting, and the instances constitute a pattern of violations rather than isolated incidents to which policymakers failed to respond or inadequately responded, then under a totality of these allegations, Plaintiffs' claim for *Monell* liability under either a theory of failure to train or failure to supervise would be sufficient at this stage of proceedings.

Because the alleged pattern of prior, similar constitutional violations is the linchpin to Plaintiffs' *Monell* claim for inadequate training or supervision—in that an established pattern permits the inference of deliberate indifference—the Court examines the prior instances now.

### e. <u>The Alleged Pattern of Constitutional Violations</u>

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Following this logic, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the [municipality] and the opportunity to conform to constitutional dictates." *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011) (internal quotations and citation omitted). The inquiry regarding adequacy of notice is highly specific to the facts of the case under consideration; the line between adequate and inadequate evidence of repeated constitutional violations does not involve a specific quantum or number of allegations. *Gonzalez*, 289 F. Supp. 3d at 1099. For example, the Ninth Circuit has held that two unconstitutional assaults occurring three months apart were insufficient to show custom or practice, *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988), but five incidents of suppression of political speech on the same day was sufficient, *Menotti*, 409 F.3d at 1148. Similarly, the Supreme Court has declined to conclude that a single event, under unique circumstances, could not constitute evidence of indifference sufficient to create liability. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409. As this Court has observed previously:

> Perhaps the most that can be said is that one or two incidents ordinarily cannot establish a policy or custom, while more incidents may permit the inference of a policy, taking into account their similarity, their timing, and subsequent actions by the municipality.

*J.M.*, 2018 WL 5879725, at *5.

### (1)     Timing of the Alleged Prior Violations

Here, Plaintiffs provide two lists of alleged prior violations in support of their *Monell* claim, spanning ten total events: 1) settlements paid by or on behalf of the City, the Police Department, or their employees; and 2) "prior incidents, complaints, [ ] or pending litigation." ECF No. 1 at ¶ 30. The Court will evaluate first the timeline created by these cases because, as explained above, liability for improper policy or custom "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

Looking first at the settlements, the Court observes that for each of the six cases listed, only the year the action was filed can be inferred, as Plaintiffs have not provided the dates of the events giving rise to the actions. ECF No. 1 at ¶ 30. Using the filing years, one case was brought in 1998, one in 2003, one in 2004, two in 2008, and one in 2013. *Id*. Turning to the four cases listed as pending litigation or prior incidents, the Court observes that two cases were filed in 2016 and two in 2018. *Id*.

Juxtaposing the years of all of Plaintiffs' examples, all but one of Plaintiffs' settlement cases are quite aged, with five cases ranging from 10 to 20 years old on the date of the events giving rise to this suit, August 18, 2018. Agedness alone is not problematic, so long as the aged cases fall into a pattern of sufficient duration, frequency, and consistency. But here, the Court is skeptical that the cases do fall into such a pattern. There is a gap of five years between the oldest cases and the 2013 case, and three years between the 2013 case and the 2016 pending/prior cases. The gaps in isolation may or may not be problematic, but taken together, the two gaps do present a deficiency, at least as currently pled, because they suggest a single incident in eight years' time.

As previously noted, isolated or sporadic events are not predicates for liability, *Trevino*, 99 F.3d

at 918, and the gap in time from the five oldest cases to the more recent cases suggest the absence of a pattern of violations. As a result, the cases ranging from 1998 to 2008 do not seem to support a pattern of timing such that the municipality and final policymakers would be on notice for events in 2018, when only a single incident occurred between 2008 and 2016 (the 2013 case). The filing dates of the recent examples, however, span 2016-2018, and the instant events occurred in 2018, which is clearly very close in time. The Court underscores, though, that it does not have incident dates before it to complete its analysis as to the actual temporal relation.

### (2)    Factual Similarity of the Prior Incidents

Plaintiffs have provided basic information on the ten alleged prior violations, allowing for some evaluation of factual similarity. ECF No. 1 at ¶ 30. Plaintiffs have omitted, however, some information such as the tenure of Smith as police chief, which would indicate which events occurred under his supervision and which did not. But as an initial observation, Plaintiffs have presented incidents involving some allegation of significant force being used in situations where the force may plausibly be said to have been excessive. ECF No. 1 at ¶ 30.

Looking at the five most recent settled or pending/prior cases presented by Plaintiffs,[8] the asserted facts are: 1) a 2013-filed case alleging an officer falsely arrested and broke a person's arm after slamming the handcuffed person against a patrol vehicle; 2) a 2016-filed case alleging officers fatally shot an unarmed, non-threatening man who ran away from officers following an attempt to unlawfully detain him, and officers failed to timely summon medical care; 3) a 2016-filed case alleging an officer fatally shot a non-threatening man (no further circumstances provided); 4) a 2018-filed case alleging officers fatally shot an unarmed, non-threatening man inside of a vehicle with another unarmed, non-

---

[8] The violations asserted in the five cases from 1998 to 2008 are: 1) a 1998-filed case alleging an officer fatally shot an unarmed, fleeing parolee in the back; 2) a 2003-filed case alleging officer assaulted, threatened, and pistol-whipped a non-threatening person while a fellow officer stood by without intervening; 3) a 2004-filed case alleging officers falsely arrested and used excessive force, including a taser, against a non-threatening disabled person; 4) a 2008-filed case alleging officer shot a fleeing person, and when he turned with his hands raised to surrender, continued shooting; and 5) a 2008-filed case alleging unlawfully entered a residence, repeatedly struck, battered, and assaulted multiple occupants, and unlawfully arrested them. ECF No. 1 at ¶ 30.

threatening passenger sitting next to the decedent; and 5) a 2018-filed case alleging officers pulled a passenger from a vehicle and violently slammed him to the ground without cause. *Id*.

While Plaintiffs point to the above as examples supporting policy or lack of policy related to unreasonable force disciplining, training, or supervising relevant to this case, "the identified deficiency in a local governmental entity's training program must be *closely related* to the ultimate injury," *Lee*, 250 F.3d at 681, which, as noted earlier, is the standard applied to supervision, as well. *Davis*, 869 F.2d at 1235. Plaintiffs do not describe the policy at issue beyond writing that it is "the use of excessive and unreasonable force against persons contacted." ECF No. 1 at ¶ 29.

The question whether Plaintiffs' examples above, involving a handcuffed person, two people in vehicles, one in unspecified circumstances, and one fleeing person, place Defendants on notice of deficiencies or omissions in training or supervision that is closely related to the ultimate injury here— the alleged shooting of Carmen in the back, without warning, while running away unarmed and non-threateningly following a vehicle pursuit—is answered taking into account, together, the similarity of the incidents, their timing, and subsequent actions by the municipality. *J.M.*, 2018 WL 5879725, at *5. Accordingly, the Court turns now to evaluating the subsequent actions of the municipality in response to the alleged incidents.

### (3)     Subsequent Municipal Action or Inaction

"[C]ourts have concluded that a policy may be inferred from the conduct of a municipality after an incident when no steps are taken to reprimand or otherwise take action in response to egregious conduct." *J.M.*, 2018 WL 5879725, at *5. Here, Plaintiffs allege that the City, Police Department, and Smith "were or should have been on notice regarding the need to discontinue, modify, and/or implement new and different versions of policies, customs, or practices because the inadequacies were so obvious." ECF No. ¶ 31. Critically, this statement is not an actual averment as to what the City (or the other Defendants, for that matter) did or did not do in relation to the incidents Plaintiffs have listed in their complaint. Plaintiffs have included no information on investigations, or lack thereof; no information on

disciplining or reprimanding of officers, or lack thereof; and so forth. *Starr* and its progeny have set a higher pleading standard than formerly applied in § 1983 actions, including *Monell* claims. A plaintiff must articulate theory and facts giving rise to a plausible inference of deliberate indifference, and here, there are no facts concerning subsequent action or inaction in the wake of the incidents alleged by Plaintiffs.

Taking a step back, the Court has employed three factors in evaluating whether Plaintiffs have alleged a sufficient pattern of prior constitutional violations to demonstrate plausibly deliberate indifference regarding training and supervision related to unreasonable force. The three factors employed—timing, similarity, and subsequent municipal action—are evaluated together. In this matter, the Court finds that the timing of at least five cases weighs against Plaintiffs as detailed above. At least four cases may be sufficiently close in time but exact incident dates are missing from the pleading. Regarding factual similarity, the Court finds that Plaintiffs have presented a pattern of cases in which significant force is alleged to have been used in situations where the force may plausibly be said to have been excessive, but the Court notes that context is missing from one case, some cases involve factually distinct circumstances, and other sets of facts, such as the tenure of Smith as chief, are simply missing. Finally, the Court observes a total absence of information regarding subsequent action or inaction by the municipality, other than one generalized statement.

Taking these three factors in their entirety, Plaintiffs have not alleged sufficiently a pattern of prior, similar constitutional violations that plausibly demonstrate deliberate indifference in training or supervision, such that the pattern permits inference of policy or lack of policy on excessive force. Defendants' motion to dismiss the *Monell* claims against the City is GRANTED.

**D.** **Fourth Amendment Unreasonable Force Claims: Smith in His Individual Capacity**

    **1.** **Contentions**

Defendants move to dismiss Brent Smith from the Fourth Amendment unreasonable force claims for failure to state a claim upon which relief may be granted. ECF Nos. 9-1 at 4-6, 13 at 6-7. Defendants

contend that Plaintiffs' allegations concern Smith's official capacity, rather than his individual capacity, even though Smith is sued only in his individual capacity. *Id.* Because the claims do not support suit against Smith in his individual capacity, according to Defendants, Smith should not be party to this action. *Id.*

Plaintiffs assert, on the other hand, that their claims sufficiently allege that Smith is "individually liable for violating [Carmen's] Fourth Amendment rights through the maintenance of inadequate policies or customs concerning the use of excessive force and unreasonable force against citizens contacted by his personnel." ECF No. 11 at 9. Plaintiffs point to the alleged use of excessive force in this case, as well as other cases listed in their complaint, as evidence to support suit against Smith in his individual capacity. *Id.*

### 2. **Law and Analysis**

#### a. **§ 1983**

A supervisor may be held individually liable under § 1983 "only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional deprivation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) (internal quotations and citation omitted). Thus, a supervisor cannot be held liable on a theory of vicarious liability. *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). In his or her individual capacity, a supervisor may be liable for (1) his or her own culpable action or inaction in the training, supervision, or control of his or her subordinates; (2) for his or her acquiescence in the constitutional deprivation; or (3) for conduct that shows a deliberate indifference to the rights of others. *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).

Here, Plaintiffs have combined claims for excessive force under § 1983, *Monell* liability, and individual liability for Smith in single causes of action (claims one, four, and five). Plaintiffs state four times in their complaint that the City, the Police Department, Smith, and Does 26 to 50 acted "as policy-making authorities," who "knew or should have known" that Does 1 to 25 "were inadequately trained,

supervised, or disciplined resulting from either the lack of proper training, pursuant to policy, or the result of the lack of policy concerning the use of excessive and unreasonable force." ECF No.1 at ¶¶ 29, 36, 52, and 59.

When challenged by Defendants, Plaintiffs concede that they are not alleging that Smith was personally involved with Carmen's alleged constitutional deprivation through "direct and personal participation." ECF No. 11 at 10. Instead, Plaintiffs contend they have articulated a theory related to Smith's role as a policymaker. But if Plaintiffs are alleging that Smith is individually liable under § 1983 on a theory of culpable action or inaction in the training, supervision, or control of subordinates, Plaintiffs misunderstand the nature of that liability. For liability to attach, Plaintiffs must demonstrate "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates,* 883 F.3d at 1242-43. "The requisite causal connection can be established ... by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez*, 891 F.3d at 798 (alterations original) (quoting *Starr*, 652 F.3d at 1208). Plaintiffs have alleged nothing akin to this in their complaint.

It appears possible that Plaintiffs are alleging that Smith is individually liable under § 1983 on a theory that his conduct shows deliberate indifference to the rights of others, which under existing case law can result in individual liability. *Starr*, 652 F.3d at 1208. Under this theory, a plaintiff would need to demonstrate that the defendant "acquiesced in a deficient policy that was a moving force behind the harm caused to the plaintiff." *Id.* (internal quotations and citation omitted). Here, Plaintiffs fail to appreciate the import of the term "acquiesced" and the phrase "moving force."

In *Starr*, the Ninth Circuit found that the plaintiff had stated a claim upon which relief could be granted for deliberate indifference when the plaintiff alleged a supervisor's 1) knowledge of the unconstitutional conditions; 2) knowledge of the culpable actions of his subordinates, and 3) the supervisor's inaction—which taken in totality amounted to acquiescence in the unconstitutional conduct

of his subordinates. 652 F.3d at 1208. In evaluating the sufficiency of the plaintiff's pleading, the court wrote: "It is somewhat tedious to recount the many allegations in the complaint detailing what [the defendant] knew or should have known, and what [the defendant] did or failed to do" because the detailed, factually-rich list of prior examples alleged by the plaintiff in support of his claim was so lengthy. *Starr*, 652 F.3d at 1209. The plaintiff alleged, with great specificity, seventeen prior incidents and reports that put the defendant on notice of injuries substantially similar to the plaintiff's, and the plaintiff alleged—again, with specificity—the action or inactions of the defendant in response to each incident. *Id.* at 1209-12.

Here, the Court finds this complaint to be more like that in *Keates*, in which the Ninth Circuit explained:

> The complaint here does not allege that [the supervisor] was directly involved in the allegedly unconstitutional conduct or that he had knowledge of the constitutional deprivations and acquiesced in them. Rather, the complaint makes conclusory allegations that [the supervisor] promulgated unconstitutional policies and procedures which authorized the particular conduct in this case and thus directly caused [the subordinate's] allegedly unconstitutional conduct. These allegations do not suffice to state a claim of supervisory liability.

*Keates*, 883 F.3d at 1243. As to any individual capacity claim against Smith, Plaintiffs' complaint does not reach the clear standard set by *Starr*.

The Court finds that, as alleged, Plaintiffs' complaint attempts to state a § 1983 claim against Smith by relying on the same allegations Plaintiffs use to articulate their *Monell* claim, never moving explicitly past a vicarious liability theory. Smith's conduct is not differentiated in any way from that of the City or the Police Department, and as such, it fails to plead individual liability for Smith. Plaintiffs' reliance on the list of cases purporting to establish a pattern of constitutional violations fails because Plaintiffs have not contextualized the cases is a way that demonstrates plausibly Smith's knowledge of the alleged constitutional violations, his knowledge of the culpable actions of his subordinates, and his inaction in response, such that a deliberate inference of indifference can be made. *See* § C(2)(e) *above*.

For the reasons above, Defendants' motion to dismiss Brent Smith from claim one is GRANTED, with leave to amend.

### b. Excessive Force under California's Constitution

Defendants move to dismiss Smith from Plaintiffs' claim for excessive force brought under California's Constitution, but Defendants do not separately evaluate or provide argument specific to that claim. ECF No. 9-1 at 4-6.

The Court observes that the claim under California's Constitution alleges the vicarious liability of the City and Police Department for Smith's "acts or omissions." ECF No. 1 at ¶ 53. Because Defendants have not addressed why, under principles of *respondeat superior*, Smith's alleged actions or omissions would not give rise to vicarious liability, and because the Court has no independent duty to evaluate this non-jurisdictional issue, the Court DENIES Defendants' motion to dismiss Smith from claim four.

### c. Excessive Force under the Bane Act

Defendants also move to dismiss Smith from Plaintiffs' claim for excessive force brought under California's Bane Act, but again, Defendants do not separately evaluate or provide argument specific to that claim. ECF No. 9-1 at 4-6.

The Court notes that the Bane Act claim, like the state constitutional claim, alleges the vicarious liability of the City and Police Department for Smith's "acts or omissions." ECF No. 1 at ¶ 60. Defendants have not addressed why, under principles of *respondeat superior*, Smith's alleged actions or omissions would not give rise to vicarious liability. The Court has no independent duty to evaluate this non-jurisdictional issue but observes that the valence of authority supports the proposition that agency liability applies to Bane Act claims. *See, e.g., Rodriguez*, 891 F.3d at 787 (suit brought under § 1983 and Bane Act against twenty-eight individuals and the County of Los Angeles); *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 841-43 (2004) (Sued under the Bane Act, County of Los Angeles moved for dismissal on other grounds, without contesting agency liability).

Defendants' motion to dismiss Smith from claim five is DENIED.

**E.** **Request to Dismiss Chief Brent Smith from Remaining Claims**

    **1.** **Contentions**

Under the previous heading, defendant Smith was dismissed from claim one, but not claims four and five, based on allegations of excessive force and Smith's role as a purported policymaker. Because Defendants' motion states they are seeking dismissal of Smith from the entire action, the Court next evaluates claims seven and eight, for negligence and wrongful death, which are brought as tort claims under California law. ECF Nos. 9-1 at 4-6, 13 at 6-7. Like claims four and five, Defendants do not separately argue for Smith's dismissal from these claims, but to the extent Defendants intend for their argument regarding the Fourth Amendment claims to apply here, the Court addresses the argument briefly.

    **2.** **Law and Analysis**

Under California Government Code § 815.2 ("§ 815.2"), a public entity may be held vicariously liable for the negligence of administrators or supervisors in hiring, retaining, and supervising an employee who commits a tort. *C.A. v. Wm. S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861 (2012). Here, Plaintiffs allege that Smith had "a duty of care and breached that duty by hiring, retaining, and failing to adequately train and supervise … incompetence or unfit" officers, which "created a particular risk or hazard." ECF No. 1 at ¶¶ 78, 85. Plaintiffs are alleging liability under a theory of *respondeat superior* that would hold the City or Police Department vicariously liable for the alleged negligent act or acts of Smith. ECF No. 1 at ¶¶ 79, 86. This type of liability comports with § 815.2 and case law that has examined it. *See, e.g., Thompson v. Sacramento City Unified School Dist.*, 107 Cal. App. 4th 1352, 1371 (2003) (establishing elements of "actionable negligence" that injured student had to prove against a school district for recovery on negligent supervision claim).

As it relates to Smith's inclusion as a named Defendant, a California appellate court has expressed the need to at least identify, if not join, the alleged negligent employee:

> [T]he liability of the employer only attaches if and when it is adjudged that the employee was negligent as well. If the agent or employee is exonerated, the principal or employer cannot be held vicariously liable. [ ] Furthermore, unless the employee is identified, the trier of fact will not be able to determine if the elements needed to assert vicarious liability have been proved. [ ] Thus, **the doctrine clearly contemplates that the negligent employee whose conduct is sought to be attributed to the employer at least be specifically identified, if not joined as a defendant.**

*Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004) (omitting internal citations) (disapproved on other grounds in *Hayes v. County of San Diego*, 57 Cal. 4th 622 (2013)). Where, as here, Smith has already been named a party to the action, and *Munoz* suggests that joining him is not only proper, but perhaps preferable to the lesser step of simply identifying him, the Court will decline Defendants' request to dismiss Smith from these claims. The motion is DENIED.

**F.    Right of Familial Association Under the First and Fourteenth Amendments**

**1.    Contentions**

Plaintiffs bring two claims for loss of the right to familial association, companionship, and society, one under the First Amendment and one under the Fourteenth Amendment, with both claims alleging losses for Carmen's father, brothers, aunt, grandmother, and grandfather. ECF No. 1 at ¶¶ 39-48. Under a section entitled "Parties" that uses perfunctory language, Plaintiffs allege, in the case of each individually named Plaintiff, that he or she "cohabitated" with Carmen and "shared a close relationship and special bond" with him, and that the relationship "presupposed deep attachments, commitments, and distinctively personal aspects of their lives." ECF No. 1 at ¶¶ 6-11. Defendants challenge the two familial association claims on three grounds—first, that the claims are duplicative; second, that certain Plaintiffs do not have standing to bring the claims; and third, that Plaintiffs fail to plead sufficient facts to support the claims. ECF No. 9-1 at 6-8, 13 at 7-9.

**2.    Law and Analysis**

"There are two distinct forms of freedom of association: (1) freedom of intimate association, protected under the Substantive Due Process Clause of the Fourteenth Amendment; and (2) freedom of

exprressive association, protected under the Freedom of Speech Clause of the First Amendment." *Erotic*

*Service Provider Legal Educ. and Research Project v. Gascon*, 880 F.3d 450, 458 (9th Cir. 2018), *as*

*amended*, 881 F.3d 792 (9th Cir. 2018), and the Ninth Circuit has held that "claims under both the First

and Fourteenth Amendment for unwarranted interference with the right to familial association could

survive a motion to dismiss." *Mann v. City of Sacramento*, 748 Fed. Appx. 112, 114 (9th Cir. 2018).

Less clear are the exact contours of familial relationship that will permit recovery under Ninth Circuit

precedent, as the analysis involves evaluating the "objective characteristics of the relationship" to

determine whether the relationship is "sufficiently personal or private to warrant constitutional

protection." *Id.* at 115 (internal quotations omitted) (citing *Bd. of Directors of Rotary Int'l v. Rotary*

*Club of Duarte*, 481 U.S. 537, 545-46 (1987)).

     In *Mann v. City of Sacramento*, the Ninth Circuit held that:

> Plaintiffs failed to allege a violation of their constitutional rights to
> freedom of association under any theory recognized by this court. First,
> Plaintiffs have not pleaded sufficient facts to show that they and [the
> decedent] shared an "expressive association" right protected by the First
> Amendment. Their complaint alleged only that they "**shared a close
> relationship and special bond**" with [the decedent], and that "[t]heir
> relationships with their brother . . . **presupposed deep attachments,
> commitments, and distinctively personal aspects of their lives**."

748 F. App'x at 114.

     The court further found that Plaintiffs had not pled:

> sufficient facts to show that any of them shared an "intimate association"
> right protected under the First or Fourteenth Amendments. Plaintiffs have
> not alleged specific facts sufficient to show that any of them shared with
> [the decedent] a relationship of a type discussed in *Board of Directors of
> Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987),
> and its progeny.

*Id.*

     Still further, the Ninth Circuit concluded that:

> Plaintiffs did not allege that their relationships with [the decedent]
> involved marriage, child rearing, or cohabitation, as in *Lee* or *Keates*. Nor
> did they allege specific facts about the "objective characteristics" of their

> relationships with [the decedent] to show that they were nonetheless the
> sort of relationships that "warrant constitutional protection." Therefore,
> the complaint's conclusory and formulaic recitation of language
> from *Rotary Club* was not sufficient to plead a right of intimate
> association protected by the First Amendment.

*Id.* at 115 (citing *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662) (referencing *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) and *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018)).

This Court quotes *Mann* at length because the language of the complaint at issue in that case is identical to the language at issue here, with one exception. Here, there is a single addition to the complaint, which is an allegation that all individual Plaintiffs cohabitated with Carmen. ECF No. 1 at ¶¶ 6-11. That allegation is significant under *Mann*, but it still is conclusory in the sense that it is pled in a way that is devoid of facts—for instance, facts as to how long Carmen's relatives cohabitated with him, and how that period of cohabitation demonstrates, as an "objective characteristic," that each relative's relationship is "sufficiently personal or private to warrant constitutional protection." *Mann*, 748 F. App'x at 114. *See Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503-506 (1977) (discussing kinship in the context of extended households).

Plaintiffs' complaint is conclusory and formulaic in its recitation of language from *Rotary Club*, and now, in adding one factor from *Mann*. Because Plaintiffs' claims are conclusory and formulaic, they are not sufficient to plead a right of intimate association. Defendants' motion to dismiss is GRANTED, with leave to amend.

## G. **Unreasonable Force Under California's Constitution**

### 1. **Contentions**

Defendants contend that Plaintiffs' fourth claim, for unreasonable force in violation of article I, section 13 of California's Constitution, must be dismissed because that section does not provide a cause of action for monetary damages. ECF Nos. 9-1 at 8, 13 at 9-10. Plaintiffs, on the other hand, engage in a lengthy analysis under the framework of *Katzberg v. Regents of the Univ. of Cal.*, 29 Cal. 4th 300 (2002), to demonstrate the viability of their claim. ECF No. 11 at 14-21. Both parties agree that the issue

has not been decided by California's courts. ECF Nos. 9-1 at 8, 11 at 14.

### 2. Law and Analysis

The Court notes at the outset that it is "not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." *Paul v. Watchtower Bible and Tract Soc. of New York, Inc.*, 819 F.2d 875, 879 (9th Cir. 1987). The Ninth Circuit's reasoning is, in part, that: "A policy by the federal courts never to advance beyond existing state court precedent would vest in defendants the power to bar the successful adjudication of plaintiffs' claims in cases with novel issues; defendants could ensure a decision in their favor simply by removing the case to federal court." *Id.*

Here, Plaintiffs have engaged in a full analysis of the viability of their claim pursuant to *Katzberg*, under which the California Supreme Court laid out the "framework for determining the existence of a damages action to remedy an asserted constitutional violation." 29 Cal. 4th at 317. Defendants do not engage this framework and simply cite district court cases that also largely failed to engage the *Katzberg* framework. ECF No. 9-1 at 8.

Defendants may be right that article I, section 13 is not an appropriate vehicle for recovering monetary damages for the harm alleged, but the Court cannot assess the issue adequately given that Defendants did not undertake the necessary analysis. This is Defendants' motion; they bear the burden and the Court has no independent duty to evaluate their contentions as to this non-jurisdictional issue. Since Defendants have failed in their burden, the Court DENIES their request to dismiss the claim brought for excessive force under article I, section 13 of California's Constitution.

### H. Bane Act Standing

#### 1. Contentions

Plaintiffs bring a single Bane Act claim but allege two different theories that would see different Plaintiffs recovering under each theory. ECF No. 1 at ¶¶ 56-68. First, under a theory of unreasonable force, Plaintiffs bring a claim on behalf of Carmen's estate. ECF No. 1 at ¶¶ 56-62. Second, under a

theory of right to familial association, companionship, and society, Plaintiffs bring a claim on behalf of Carmen's father, brothers, aunt, grandmother, and grandfather. ECF No. 1 at ¶¶ 63-68.

Defendants assert that only the first half of the combined claim, the one made on behalf of Carmen's estate, is permissible under the Bane Act because the Act permits only a personal cause of action for a victim subjected to violence or threats. ECF Nos. 9-1 at 9-10, 13 at 10-11. Plaintiffs counter by inviting this Court to "use [our] best judgment to predict" how California's Supreme Court would rule on their combined claim, which, if the Court permitted the claim, would require rejection of state intermediate appellate court precedent. ECF No. 11 at 21-23. In other words, Plaintiffs invite this Court to give the Bane Act a novel interpretation that extends the reach of the Bane Act to potential victims beyond those initially aggrieved.

### 2. **Law and Analysis**

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018). "It clearly provides for a *personal* cause of action for the victim" of a civil rights violation. *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995) (emphasis original). And while the Act was once interpreted by courts as limiting relief to only those who had suffered hate crimes, the language of the Act was expanded in 2000 by California's legislature to clarify that the Act provides relief irrespective of membership in a protected class or classes. *Venegas*, 32 Cal. 4th at 841-42.

Nowhere can this Court find support for Plaintiffs' position that the 2000 clarification to the Bane Act expanded the scope of victims contemplated from those suffering a personal civil rights violation to their family member, relatives, or other persons experiencing a secondary harm. The Ninth Circuit has explained clearly that an excessive force civil rights violation under the Bane Act "requires a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese*, 888 F.3d at 1043. The Ninth Circuit also has noted that "interference with rights by 'threat, intimidation or

coercion,' . . . connote[s] an element of intent." *Id*. at 1044.

Here, without intent to harm Carmen's relatives, who were not witness to the events leading to this litigation, there is no basis for a Bane Act claim. Essentially, Plaintiffs ask this Court to expand Bane Act liability to be nearly identical to § 1983 liability. Plaintiffs' invitation is declined; there is no basis for finding such expanded liability.

For the foregoing reasons, to the extent that Plaintiffs' Bane Act claim alleges recovery by Carmen's relatives for loss of familial association, companionship, and society, Defendants' motion is GRANTED and that portion of the claim is dismissed. Because amendment of that portion would be futile, it is dismissed WITH PREJUDICE.

## I.    <u>Duplicative Language in Bane Act Claim</u>

### 1.    <u>Contentions</u>

Defendants next move to strike from Plaintiffs' Bane Act claim language that reiterates his fifth claim for unreasonable force and second and third claims for loss of familial association, companionship, and society. ECF No. 9-1 at 10. Defendants contend that the language is "duplicative, superfluous and unnecessary," and should be stricken on that basis. *Id*. Plaintiffs counter that not only is Defendants' request to strike untimely, but it seeks to remove content simply for being too specific in elaborating Plaintiffs' theories of liability. ECF No. 11 at 24-25.

### 2.    <u>Law and Analysis</u>

Defendants' motion to strike is not timely under Federal Rule of Civil Procedure 12(f), which requires the motion be made "before responding to the pleading." In addition, "the function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Here, the second portion of Plaintiffs' Bane Act claim, relating to Carmen's relatives for loss of familial association, companionship, and society, has been dismissed already under the previous heading. The portion that remains does not pose a risk of requiring extraneous expenditure

of time and money on a spurious issue.

Accordingly, the motion to strike portions of Plaintiffs' pleading as redundant is DENIED.

## VI. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part, as follows:

1)     Defendants' motion to stay this action pending joinder of Stephanie Beidleman, Carmen's mother, is DENIED; however, the Court, of its own volition, hereby ORDERS joinder of Stephanie Beidleman as a Plaintiff to this action and that Plaintiffs' counsel shall work with the Clerk of the Court to provide proper notice of this decision to Ms. Beidleman;

2)     Defendants' motion to dismiss the Ceres Police Department from this action is DENIED;

3)     Defendants' motion to dismiss claim one against the City of Ceres insofar as it alleges *Monell* liability is GRANTED;

4)     Defendants' motion to dismiss Brent Smith from the action is GRANTED as it relates to claim one, AND the motion is DENIED as it relates to claims four, five, seven, and eight;

5)     Defendants' motion to dismiss claims two and three is GRANTED;

6)     Defendants' motion to dismiss claim four is DENIED;

7)     Defendants' motion to dismiss claim five, insofar as it relates to a theory of loss of familial association brought on behalf of Jorge Mendez, Sr., Jorge Mendez, Jr., Kyland Riley, Rosario Sanchez, Bertha Mendez, and Domingo Mendez, is GRANTED WITH PREJUDICE;

8)     Defendants' motion to strike duplicative language is DENIED;

9)     Within 30 calendar days from the date of this order, Plaintiffs are to file an amended pleading that is in total compliance with this Order; and,

//

//

//

10)     Within 30 days from the date of the filing of the amended pleading, Defendants shall file a responsive pleading.

The Court has no resources to write more than one extensive Order on how to plead an amended complaint. The amended complaint that will be filed in 30 days will be the last opportunity.

**IT IS SO ORDERED.**

    **Dated:**   **June 27, 2019**              **/s/ Lawrence J. O'Neill**
                                          **UNITED STATES CHIEF DISTRICT JUDGE**